**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1747**

MASOUD SHARIF,

              Plaintiff - Appellant,

         v.

UNITED AIRLINES, INC.,

              Defendant - Appellee,
         and

UNITED CONTINENTAL HOLDINGS, INC.

              Defendant.

------------------------------

METROPOLITAN WASHINGTON EMPLOYMENT LAWYERS ASSOCIATION;
NATIONAL EMPLOYMENT LAWYERS ASSOCIATION,

              Amici Supporting Appellant.



Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Liam O'Grady, District
Judge.  (1:14-cv-01294-LO-IDD)


Argued:  September 21, 2016        Decided:  October 31, 2016


Before WILKINSON and FLOYD, Circuit Judges, and IRENE M. KEELEY,
United States District Judge for the Northern District of West
Virginia, sitting by designation.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Floyd and Judge Keeley joined.

———————————

**ARGUED:** Robert Scott Oswald, THE EMPLOYMENT LAW GROUP, P.C., Washington, D.C., for Appellant. Hugh Scott Johnson, Jr., PCT LAW GROUP, PLLC, Alexandria, Virginia, for Appellee. Stephen Z. Chertkof, HELLER, HURON, CHERTKOF & SALZMAN, PLLC, Washington, D.C., for Amici Curiae. **ON BRIEF:** Andrea M. Downing, THE EMPLOYMENT LAW GROUP, P.C., Washington, D.C.; Richard T. Seymour, LAW OFFICE OF RICHARD T. SEYMOUR, P.L.L.C., Washington, D.C., for Appellant. Angela H. France, PCT LAW GROUP, PLLC, Alexandria, Virginia, for Appellee. Erik D. Snyder, LAW OFFICES OF ERIK D. SNYDER, Washington, D.C.; Alan R. Kabat, BERNABEI & WACHTEL, PLLC, Washington, D.C.; Matthew C. Koski, NATIONAL EMPLOYMENT LAWYERS ASSOCIATION, Oakland, California, for Amici Curiae.

———————————

WILKINSON, Circuit Judge:

Appellant Masoud Sharif brought suit against United Airlines, Inc., for retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. (2012). The district court entered summary judgment on behalf of United Airlines and dismissed Sharif's claim. Even drawing all reasonable inferences in favor of Sharif as the nonmoving party, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000), Sharif has failed to create an issue of triable fact that the explanation United Airlines provided for his discharge was a pretext for retaliation for taking FMLA leave. To hold otherwise would disable companies from attaching any sanction or consequence to the fraudulent abuse of a statute designed to enable workers to take leave for legitimate family needs and medical reasons.

I.

On March 16, 2014, Sharif and his wife travelled on vacation to Johannesburg and Cape Town, South Africa. Each was employed by United Airlines at Dulles Airport and had assembled roughly twenty days of time off from March 16 to April 4.[1] Their

_____

[1] Sharif successfully bid for vacation leave on March 16-17, March 19-20, March 23-24, and March 26-27. United Airlines approved his request for personal holiday leave on April 2-3. Sharif's regular days off were scheduled for March 18, 21-22, 25, 28-29, April 1, and 4-5. In sum, he was not scheduled to
(Continued)

3

time off did not include, however, a short two-day period from March 30 to 31 when Sharif was assigned to customer service work in the United Airlines lounge. Sharif placed his schedule on the United Airlines shift-swap website, and successfully found someone to cover his March 31 shift. He was unable, however, to find anyone to cover his March 30 shift.

Sharif had been diagnosed with an anxiety disorder in 2009, and United Airlines had approved his request to take intermittent leave under the FMLA to handle panic attacks. At 7:00 a.m. Cape Town Time (1:00 a.m. Eastern Standard Time) on March 30 -- the day of his scheduled shift -- Sharif called United Airlines to take medical leave under the FMLA. He had not made any advance reservations for a return flight. The next day, Sharif and his wife flew from Cape Town to Milan, Italy, where Sharif's niece lived. On April 3, Sharif and his wife finally departed for Washington and arrived just in time for his wife's next shift.

The United Airlines Employee Resource Center at Dulles Airport noticed that Sharif had taken FMLA leave for the only shift he was scheduled to work in the midst of his extensive time off and notified Kenneth Martin in Human Resources. The

---

work from March 16 to April 5, except for shifts on March 30 and 31. Similarly, Sharif's wife arranged to have time off from March 16 to April 4.

4

Employee Resource Center also notified Martin that Sharif's time off coincided with his wife's schedule except for March 30, and that Sharif had taken FMLA leave under similar circumstances in September 2013. Martin consequently began an investigation of Sharif's FMLA claim.

On April 23, 2014, Martin interviewed Sharif. Jon Connor, the United Airlines Area Manager, Elizabeth Tranium, Sharif's supervisor, and a representative from the International Association of Machinists and Aerospace Workers ("Workers Union") were also present. When asked about his vacation and March 30 absence, Sharif sat in silence for a period of minutes before he gave a series of inconsistent answers. Sharif first replied that he was not scheduled to work on March 30, and when asked why he had taken FMLA leave if he did not have a shift, Sharif responded that he "d[id] not recall being out sick this day or calling out sick." J.A. 344-45.

After another pause, Sharif clarified that he began trying to return home flying standby (as airline employees often do) beginning March 29 but was unable to find any available flights due to an international jazz festival in Cape Town and an impending pilot strike on Lufthansa. Sharif's story later evolved to claim he actually arrived at the airport on March 28 to begin looking for a flight, and that he and his wife obtained the additional days off in April to gather with family in

5

Pittsburg for the Persian New Year. As a result of his repeated unsuccessful attempts to find any means to return to Washington in time for his shift, Sharif explained that he grew anxious and was eventually seized by a panic attack which then led to his use of FMLA leave. He could not remember if he or his wife had called United Airlines.

Martin and Connor both viewed Sharif's behavior and shifting explanations as evidence of dishonesty. Martin circulated an email to United Airlines senior management explaining that "[w]hen we questioned [Sharif], he was not truthful and told us initially that he didn't have to work that day. He then changed his story many times. He had no intentions of being at IAD [Dulles] that day." J.A. 376. Sharif was subsequently suspended without pay, pending further investigation.

United Airlines ultimately notified Sharif of its intention to discharge him for fraudulently taking FMLA leave and for making dishonest representations during the ensuing investigation. Such conduct was a violation of the United Airlines Working Together Guidelines, which clearly require that all employees "[b]e truthful in all communications, whether oral, written or electronic." J.A. 264. Sharif was given a hearing on June 5, 2014, after which the Workers Union told

6

Sharif he was likely to be fired and recommended that he retire. Sharif retired under threat of termination on June 9, 2014.

## II.

Congress enacted the FMLA to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1),(2) (2012). In relevant part, Congress recognized that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." Id. § 2601(a)(4). Congress thus required employers to accommodate a limited amount of "intermittent" leave "when medically necessary" as certified by a health care provider. Id. §§ 2612(b), 2613; 29 C.F.R. §§ 825.202-05, 825.305-08 (2016) (defining requirements for intermittent leave). Congress intended the FMLA to accomplish these purposes "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3).

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." Id. § 2615(a)(1). The substantive rights guaranteed by the FMLA are prescriptive, and a plaintiff seeking redress for employer interference with an entitlement is only required to show that he or she qualified for the right that was denied.

7

Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 546 (4th Cir. 2006).

The FMLA also provides that "[i]t shall be unlawful for any employer to discharge or in any manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). This limitation on employers is proscriptive. Yashenko, 446 F.3d at 546. To succeed on a claim of retaliation, a plaintiff must show "that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." Id. at 551 (quoting Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998)). Unlike prescriptive entitlement or interference claims, employer intent here is relevant. Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 160 (1st Cir. 1998); Rice v. Sunrise Express, Inc., 209 F.3d 1008, 1017 (7th Cir. 2000).

Intent can be established either by direct evidence of retaliation or through the familiar burden shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800–06 (1973). Laing v. Fed. Exp. Corp., 703 F.3d 713, 717 (4th Cir. 2013); Yashenko, 446 F.3d at 551. Under the latter framework, a plaintiff must first produce sufficient evidence to establish a prima facie case that the elements of retaliation are satisfied. McDonnell Douglas, 411 U.S. at 802. The burden of

8

production then shifts to the employer to rebut the prima facie presumption of retaliation and provide "some legitimate, nondiscriminatory reason" for the adverse employment action. Id.; see Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-55 (1981). If the employer meets this burden, the presumption of retaliation is dissolved and the plaintiff resumes the burden of persuading the factfinder that the employer's proffered explanation is merely a pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993); Burdine, 450 U.S. at 256; McDonnell Douglas, 411 U.S. at 804. A plaintiff may satisfy this burden by showing either that the employer's explanation is not credible, or that the employer's decision was more likely the result of retaliation. Reeves, 530 U.S. at 143; Burdine, 450 U.S. at 256. In any event, the plaintiff must produce sufficient evidence to create a genuine dispute of material fact such that a reasonable factfinder could conclude the adverse employment action was taken for an impermissible reason, i.e., retaliation. Reeves, 530 U.S. at 143, 148-49; Hicks, 509 U.S. at 510-11; Burdine, 450 U.S. at 253.

Sharif argues that United Airlines threatened to terminate his employment in retaliation for taking FMLA leave, a violation of the proscriptive provisions in 29 U.S.C. § 2615(a)(2). Sharif contends that he produced sufficient evidence for a reasonable

jury to conclude that his use of FMLA leave was a protected activity and that he was constructively discharged as a result. United Airlines maintains that Sharif was discharged not only for fraudulently taking FMLA leave but also for being untruthful during the ensuing investigation in violation of the Working Together Guidelines. The main issue on appeal is whether Sharif has produced sufficient evidence of pretext to survive summary judgment.

## III.

The summary judgment standard requires that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see FED. R. CIV. P. 56(a) (2016). Even drawing all reasonable inferences in Sharif's favor, Reeves, 530 U.S. at 150-51, he fails to meet this burden. Sharif fails to produce sufficient evidence for a reasonable factfinder to conclude that United Airlines' explanation was a pretext for retaliation. He cannot rely upon "mere speculation or the building of one inference upon another" to establish that he was fired in retaliation for taking FMLA leave. Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)). When disciplinary action is "based on little evidence of wrongdoing, a genuine issue might exist as to

10

pretext," but the evidence here plainly exceeds that threshold. See Laing, 703 F.3d at 722.

A.

Sharif claims that he travelled to South Africa with the intention of returning in time for his March 30 shift, but that he was unable to obtain a return flight despite persistent efforts beginning on March 28. He contends that a prominent international jazz festival, coupled with an impending pilot strike on Lufthansa, made it impossible to find any available seats on any airline returning to Washington. The pressure to find a flight and the prospect of missing work continued to build until Sharif suffered a panic attack and called United Airlines to take FMLA leave. Once the panic attack subsided, Sharif found a flight to Milan where his niece lived so that he and his wife would have a place to stay while they continued their attempt to return home.

Sharif then explains that he was unaware of the company investigation concerning his March 30 absence until he was spontaneously questioned on April 23. Sharif says he was unable to immediately recall the events of a specific day weeks earlier and thus could not immediately and accurately recount what happened. The situation was further complicated by the onset of another panic attack during what he describes as tantamount to an interrogation. However, Sharif provided the foregoing

11

explanation once he was given the opportunity to compose himself and write a response.

This whole story runs into multiple problems. The undisputed evidence depicts an employee departing for vacation despite being scheduled to work, and then conveniently calling in FMLA leave 12 hours after the last plane departed that would allow him to return before his scheduled shift. Sharif also waited to contact United Airlines until the middle of the night in Washington when no one was present to answer the phone and ask for details about his FMLA claim. It is undisputed that he then visited his niece in Milan, and returned to Washington just in time for his wife's next shift. When Sharif was later questioned about his use of FMLA leave, he first denied even being scheduled to work, and then provided a constantly changing story about his attempt to return home. United Airlines requested receipts from the standby seats Sharif claimed to purchase in his unsuccessful attempts to find a flight, but Sharif failed to produce them. In short, Sharif provided the company with no evidence to support his claim aside from his own shifting statements. It seems perfectly logical for United Airlines to conclude that Sharif did not want to interrupt his Cape Town vacation to come back for one day of work.

12

B.

In evaluating employer intent and the question of pretext, the district court may consider "among other things, the historical background of the . . . decision; [t]he specific sequence of events leading up to the challenged decision; [d]epartures from the normal procedural sequence; and . . . [any] contemporary statements by members of the decisionmaking body." See Reno v. Bossier Parish Sch. Bd., 520 U.S. 471, 489 (1997) (quoting Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 267-68 (1977)) (discussing factors that might indicate discriminatory intent). We initially note that United Airlines approved every one of Sharif's requests for FMLA leave. These requests totaled 56 days in the two years prior to his discharge and include FMLA leave after March 30. While United Airlines cannot retaliate against someone for exercising their rights under the FMLA, this is not the record of a company that is historically hostile to FMLA leave in any discernable way.

Sharif claims that the notification Martin received from the Employee Resource Center which triggered United Airlines' investigation is actually direct evidence of retaliation. The email laid out how Sharif had taken FMLA leave for the only shift he was scheduled to work in the midst of his extensive time off, that his schedule coincided with his wife's time off

13

except for his shift on March 30, and that Sharif had taken FMLA leave under similar circumstances in September 2013. At a minimum, Sharif argues, this is evidence of pretext because he would not have been investigated and ultimately discharged but for taking FMLA leave.

We are unpersuaded. To begin with, the email from the Employee Resource Center relayed to Martin straightforward factual information, and such factual communication between human resources personnel is not, without more, evidence of discriminatory animus. Sharif also fails to understand that direct evidence must demonstrate that an adverse employment action was actually "due to . . . FMLA leave as opposed to some other lawful reason." Laing, 703 F.3d at 718 n.1; see also Stallings v. Hussmann Corp., 447 F.3d 1041, 1051 (8th Cir.2006) (explaining that termination for "calling in FMLA for non-FMLA reasons" is not direct evidence of retaliation). Contrary to Sharif's contention, the proffered evidence suggests the same nondiscriminatory motivation that United Airlines has repeatedly advanced. Sharif was investigated and subsequently discharged for fraudulently taking FMLA leave, and then for making dishonest representations during the ensuing investigation in violation of the Working Together Guidelines. Unlike Sharif's shifting narrative, the company's explanation for its action has remained a consistent one.

14

Sharif then claims that United Airlines' investigation was cursory and that failure to comply with established investigatory procedure is evidence of pretext. In response, United Airlines catalogues how it reviewed Sharif's work calendar, the time and place of his phone call to take FMLA leave, United Airlines flight records and whether Sharif had made any seat reservations. United Airlines also afforded Sharif the opportunity both to present his version of events and to prepare a written account with the subsequent assistance of a Workers Union representative, and finally requested that Sharif provide any documentation such as standby receipts that might support his story. Sharif retorts that United Airlines failed to properly verify his version of events by researching the validity of his anxiety disorder and independently checking seat availability on other airlines flying out of Cape Town prior to March 30. He also argues that, above all, he was denied "a reasonable opportunity to consult" with his Workers Union representative before first meeting with Martin as required by the governing Collective Bargaining Agreement. See J.A. 254.

Although Sharif faults United Airlines for not conducting a more thorough investigation, "the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir. 1998). United Airlines had no

15

obligation to pursue additional investigation when it had more than ample reason to believe it had been lied to. And while failure to comply with established investigatory procedures might indeed be evidence of improper motive, Arlington Heights, 429 U.S. at 267, it is not per se sufficient to create a genuine dispute as to pretext. A Workers Union representative was present at Sharif's meeting with Martin. Neither Sharif nor the Workers Union representative requested an opportunity to consult with one another, and Sharif fails to allege what difference a consultation would have made.

Finally, Sharif contends that, while he would have been penalized for simply skipping his March 30 shift, he would not have been discharged. He claims that the severity of the consequence he received is evidence of pretext. However, courts are not "a kind of super-personnel department weighing the prudence of employment decisions." DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998). Discharge is not disproportionate to the offense of misrepresentation and fraud. As the Sixth Circuit has explained, an employer can "rightfully consider[] workplace disability fraud to be a serious issue." See Seeger v. Cincinnati Bell Tel. Co., 681 F.3d 274, 284 (6th Cir. 2012). It is inconsequential that missing work without providing notice normally merits a lesser penalty because those

16

employees do not violate the honesty component of the Working Together Guidelines.

C.

The FMLA serves the important purpose of allowing employees to take leave for legitimate family needs and medical reasons, but it is not a right that can be fraudulently invoked. Dishonest representations may carry additional risks in an airline charged with meeting large volume public demands and providing safe and efficient transportation services. These goals require predictable policies that ensure to the extent possible and consistent with the FMLA that proper personnel will be on duty. While a company may not deny valid requests for leave, and an employer cannot use allegations of dishonesty as a pretext for subsequent retaliation, it is equally important to prevent the FMLA from being abused. As the Department of Labor explains, "[a]n employee who fraudulently obtains FMLA leave from an employer is not protected by FMLA's . . . provisions." 29 C.F.R. § 825.216(d).

So it is here. The evidence taken as a whole plainly paints the picture of an employee who used FMLA leave to avoid interrupting his vacation, and then gave a variety of inconsistent explanations for his behavior upon his return. Sharif fails to meet his burden of showing that United Airlines' explanation for his discharge was pretextual, and therefore

17

fails to establish a genuine dispute of material fact suitable for trial.[2]

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[2] The district court discussed, and the parties argued extensively, the application of a so-called "honest belief rule" that would require plaintiffs to show that their employers' nondiscriminatory motivation was not sincerely held. See Sharif v. United Airlines, Inc., No. 1:14-CV-1294, 2015 WL 4042173, at *6-7 (E.D. Va. July 1, 2015). We think the issues in this case are most profitably addressed through the well-established proof scheme of McDonnell Douglas and its progeny. Accordingly, we see no reason to address the "honest belief rule."