Importantly, it is well established that the nonmoving party must show more than "[t]he mere existence of a scintilla of evidence in support of [its] position[.]" Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ; see also Potter v. District of Columbia , 558 F.3d 542, 549 (D.C. Cir. 2009) ("[M]erely colorable or not significantly probative evidence ... is insufficient to defeat a summary judgment motion." (internal quotation marks and citation omitted) ). Indeed, the nonmovant must present specific facts and evidence that support its allegations and are sufficient to enable a reasonable jury to find in its favor. See Harding v. Gray , 9 F.3d 150, 154 (D.C. Cir. 1993) ("[A] mere unsubstantiated allegation ... creates no genuine issue of fact and will not withstand summary judgment." (citation omitted) ).
III. ANALYSIS
The FMLA interference and FMLA retaliation claims that Williams has brought in this case are based on the same set of facts: that Verizon investigated him, and then terminated him, after he returned from taking FMLA leave. As an initial matter, there can be "a good deal of overlap" between retaliation claims and interference claims, Gordon , 778 F.3d at 161, as explained fully below, and the fact that Williams's two claims arise out of the same facts does not preclude the Court's consideration of both legal theories. Even so, this Court finds that Williams has failed to point to anything with respect to either claim that would create more than a "mere existence of a scintilla of evidence" in support of Williams's claims. Liberty Lobby, Inc. , 477 U.S. at 252, 106 S.Ct. 2505. That is, the record evidence is not sufficient to support either Williams's contention that Verizon unlawfully restrained the rightful exercise of his FMLA rights, or his claim that Verizon illegitimately discriminated against him on the basis of his having taken FMLA leave when it fired him. Consequently, Verizon is entitled to summary judgment on both counts.
A. Williams's Amended Interference Claim Need Not Be Dismissed As Duplicative
As its opening salvo, Verizon asserts that the Court need not reach Williams's interference claim as set forth in his Amended Complaint (Count I), because it is entirely duplicative of his retaliation claim (Count II). (See Def.'s Mem. at 14-15.) Verizon argues that, because the FMLA provides "two distinct claims"-an interference claim under 29 U.S.C. § 2615(a)(1), and a retaliation claim under 29 U.S.C. § 2615(a)(2) -Williams cannot maintain both an interference claim and a *192 separate retaliation claim based on the same set of facts, which, here, involve approved FMLA leave followed by the termination of Williams's employment. (Id. at 14 (quoting Roseboro v. Billington , 606 F.Supp.2d 104, 107 (D.D.C. 2009).)
This argument is easily disposed of, as this Court has no doubt that a plaintiff alleging substantially similar facts as those that Williams asserts here can seek the simultaneous advancement of two distinct theories of FMLA liability. As noted above, retaliation claims brought under section 2615(a)(2), on the one hand, and interference claims brought under section 2615(a)(1), on the other, can sometimes "overlap[,]" Gordon , 778 F.3d at 161 ; and, indeed, the D.C. Circuit has expressly recognized that a retaliation claim in particular can be stated under both FMLA provisions, id. The standard retaliation claim involves the allegation that the plaintiff's employer sought to punish him for exercising his right to take leave under the FMLA, and this claim can be deemed cognizable under the language of section 2615(a)(2), which it makes "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2) ; see Gordon , 778 F.3d at 161 ; Long , 263 F.Supp.3d at 281. Some courts have also found that, because of the narrowness of the language in section 2615(a)(2), such facts state a claim under section 2615(a)(1). See Thomas , 227 F.Supp.3d at 99 n.3 (discussing different courts' analysis of retaliation claims); see also Gleklen , 199 F.3d at 1367.
Moreover, and significantly for present purposes, a plaintiff can allege that his employer's retaliatory response to his use of leave has interfered with that employee's right to exercise leave in the future, implicating the FMLA's interference provision. See Gordon , 778 F.3d at 161 (positing a situation in which "acts of the employer that operate as retaliation for [an] initial request may also operate as interference with [ ] later requests for use"); see also 29 C.F.R. § 825.220(c) ("The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."). In light of this 'retaliatory interference' scenario, the same set of facts can actually form the basis for two different FMLA claims: that the employer unlawfully retaliated against the employee for taking leave in the past, and also that the employer's retaliatory act will substantially interfere with that employee's right to take leave in the future. In other words, it is plausible that the same retaliatory act can undergird two different legal theories under the FMLA, and thus, separate interference and retaliation claims that pertain to only one set of actions by the employer are not necessarily duplicative.
Williams has been clear in his complaint and subsequent briefs that he wishes to bring claims for both interference and retaliation (see, e.g. , Am. Compl. (asserting two separate counts) ), and given the legal analysis set forth above, this Court sees no reason to dismiss his interference claim as necessarily duplicative of his retaliation claim on its face. Consequently, this Court will decline to follow Verizon's suggestion that Williams's "interference claim should be dismissed with prejudice" because his claim "is one of retaliation only, not interference" (Def.'s Mem. at 15), and will proceed to analyze both claims.
B. Williams's Interference Claim Fails Because There Is Insufficient Evidence That Verizon Discouraged The Exercise Of His Rights Under The FMLA
Both parties agree that Verizon approved Williams's request to take FMLA
*193 leave on March 7 and 8, 2014 (see Def.'s Stmt. ¶¶ 18, 23-24), and per Williams's amended complaint, Williams's interference claim is not based on Verizon's outright refusal of leave (see Am. Compl. ¶ 46). Instead, Williams's interference theory now rests on the fact that Verizon investigated his FMLA leave after his return to work, and subsequently fired him. Although Williams's legal assertions are less than clear, he appears to be making two related contentions: (1) that Verizon restrained the taking of FMLA leave by investigating the circumstances of his FMLA leave (see Pl.'s Opp'n at 14-15), and (2) that Verizon discouraged the taking of FMLA leave by terminating him on return from leave (see id. at 15-16).
Williams is correct when he asserts that the fact of Verizon's approval of the FMLA leave, by itself, does not preclude a valid interference claim, if Verizon nevertheless acted in a manner that had a "reasonable tendency[,]" Gordon , 778 F.3d at 165, to thwart the taking of FMLA leave. (See Pl.'s Opp'n at 11.) But, notably, Williams has not alleged, nor offered any evidence to support, that Verizon took any action with respect to Williams's taking leave. To the contrary, by all accounts, Williams appears to have taken the requested medical leave without hindrance, and the factual bases for Williams's interference claim-Verizon's investigation and its termination of him-occurred after he appears to have taken his leave successfully based on his pre-approved FMLA certification. See Gordon , 778 F.3d at 165 (recognizing that interference claims are "forward-looking[,]" as distinguished from "backward-looking" retaliation claims). Nor is there any evidence that Verizon dragged its feet in acquiescing to the specific instances of his leave on March 7, 2014, and March 8, 2014 after the fact. (See Def.'s Stmt. ¶¶ 18, 23-24.) Indeed, at the time that he called in sick and requested leave for March 8, 2014, Williams's certification for migraines had expired (see id. ¶¶ 19-20), but Verizon permitted Williams to obtain a FMLA certification from his physician for back pain some time later, and retroactively approved Williams's FMLA leave for March 8, 2014 based on that certification (see id. ¶¶ 23-24).
The best that Williams can do to sustain his interference claim on the facts presented here is to maintain that what Verizon did after he returned from FMLA leave (i.e., investigate the circumstances of Williams's leave and ultimately terminate him) discouraged any potential future FMLA leave he may have wanted to take. But there is no support in the record for this theory of interference, either. As to the investigation, Williams appears to suggest that merely by asking questions about the circumstances of his FMLA leave, Verizon unlawfully discouraged the taking of any further leave, citing an Eleventh Circuit case where the employer was found to have interfered with an employee's FMLA leave by asking for additional documentation of her FMLA need. (Pl.'s Opp'n at 14-15 (citing Diamond v. Hospice of Fla. Keys, Inc. , 677 Fed.Appx. 586, 594 (11th Cir. 2017) ).) But in that case, the employer sought additional information as it decided whether or not to approve the employee's FMLA leave request. See Diamond , 677 Fed.Appx. at 593-594 (finding that the employer's request for food receipts and other additional documentation in assessing the employee's "need for leave" was an impermissible attempt to "mak[e] approval of her leave requests more difficult"). Here, the evidence is clear that Verizon's investigation was not being conducted to construct additional hoops for Williams to traverse before his FMLA leave would be approved; instead, Verizon commenced investigating because of a reasonable suspicion that *194 Williams had been deceptive about his illness on the day he invoked the FMLA. (See Def.'s Stmt. ¶¶ 49-52 (recounting the fact that Frames received a call from Williams's cell phone in Charlotte during Williams's FMLA leave, and Alexander directed Frames to conduct an investigation only after Frames notified him of that fact).)
Verizon's legitimate attempt to look into how Williams had conducted himself during the FMLA medical leave that Verizon had authorized was entirely warranted based on the troubling facts that were brought to the company's attention, and nothing in the record indicates that the investigation had the tendency to thwart any valid request for medical leave by Williams in the future. Indeed, no employee who had a valid claim for medical leave and has used that leave appropriately would be bothered by the questions that Williams's supervisors asked. And to suggest otherwise, as Williams does here, is to accept the preposterous contention that employees can abuse the FMLA leave process with impunity, and that employers cannot do anything to audit or supervise the leave process, because to ask questions effectively makes it "triply difficult" for employees "to obtain FMLA" and to use it however they want, even inappropriately. (Pl.'s Opp'n at 18.) See Sharif v. United Airlines, Inc. , 841 F.3d 199, 206 (4th Cir. 2016) (upholding an employer's actions in terminating an employee suspected of lying about his FMLA leave, and remarking that "[w]hile a company may not deny valid requests for leave ... it is equally important to prevent the FMLA from being abused"). This Court concludes that Verizon's legitimate investigation of what appeared to be a dubious FMLA leave claim was not an act that interfered with an employee's right to bring valid FMLA requests in the future. At most, Verizon's investigation would have deterred false future FMLA claims, which does not constitute interference with the exercise of FMLA rights as a matter of law.
In regard to Williams's suggestion that Verizon's termination of his employment constituted unlawful interference, it is undisputed that it was only after the company's investigation and Williams's repeated misrepresentations during the investigatory interviews that Verizon fired him. (See Def.'s Stmt. ¶¶ 53-71.) And in this Circuit, it is well established that "[r]ights to FMLA leave-whether in the application phase, medical certification phase, or off-work phase-do not protect an employee's job against a legitimate, unrelated, reason for separation from employment." Hopkins , 851 F.Supp.2d at 155 ; see also Hopkins , 529 Fed.Appx. at 3 (rejecting an interference claim where there was a "termination for a valid business reason"). Here, it is undisputed that Williams's misrepresentations during the investigation violated Verizon's Code of Conduct (see Def.'s Stmt. ¶¶ 73-74), and such a violation is a legitimate business reason for Verizon's decision to fire Williams. Williams cannot shield himself from that outcome merely because the termination of his employment also prevented the hypothetical future exercise of his FMLA rights.
Undaunted, Williams maintains that Verizon investigated his use of FMLA leave, and then terminated him, without inquiring into whether he was really sick, and that, ultimately, Verizon penalized him "because he was not in the District of Columbia" and "was not in bed for 24 hours" during his leave. (Pl.'s Opp'n at 15.) This construction of the facts is belied by the facts in the instant record, which establish quite clearly that Williams lied about his whereabouts when he was questioned during the investigation, and that *195 his deceptiveness was one of the reasons for his termination. (See Termination Letter at 1 (stating that Verizon determined that Williams misrepresented his health status, falsified records, and was not honest and forthcoming during the investigation); see also Def.'s Stmt. ¶¶ 51-52, 68 (demonstrating that Williams was not terminated until after Verizon had investigated the matter for more than two months, even though it was aware that Williams had traveled to New Orleans at the outset).) Williams's suggestion that Verizon had to verify Williams's malingering before it could fire him is also inconsistent with the law, which does not mandate that an employer amass "medical documentary evidence" that an employee is "feigning his illness" (Am. Compl. ¶ 53), prior to responding to suspected FMLA leave violations. See Sharif , 841 F.3d at 206 (finding, in a case where plaintiff was investigated and discharged after the employer discovered that he was traveling during his FMLA leave, that the employer "had no obligation to pursue additional investigation when it had more than ample reason to believe it had been lied to[,]" as long as it had made a reasonably informed decision). Williams's similar suggestion that Verizon interfered with his exercise of FMLA rights by attaching additional restrictions to what constitutes valid FMLA leave, and firing him based on the failure to meet those made-up restrictions (see id. at 15 ("Their insistence that he remain in D.C. and be in bed for 24 hours is made all the more bizarre, when not a single Verizon employee determined them to be qualifying conditions for FMLA leave."); id. ("If he was sick, in bed, attending a funeral in Shanghai, and Verizon had notice of his leave, it is an FMLA qualifying incident.") ), is likewise meritless. The record shows that Verizon's investigation was a reasonable attempt to determine what Williams actually did on the days he called in sick (see Def.'s Stmt. ¶¶ 56-59), in order to determine whether his request for leave was valid in light of the travel information Verizon received, and not an effort to impose new rules about what employees are permitted to do when they are truly sick, as Williams suggests.
For all his talk of actual illness, Williams has essentially ignored what is by far the most salient point as far as the interference claim is concerned: regardless of whether Williams actually had an FMLA-qualifying illness on March 7 and 8, 2014, Verizon was entitled to conduct an investigation based on its reasonable belief that he was not ill and was instead feigning illness and fraudulently claiming FMLA leave. See George v. Leavitt , 407 F.3d 405, 415 (D.C. Cir. 2005) ("[A]n employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false."). If Williams was telling the truth and was in fact ill, then Verizon's investigation could very well have revealed that fact. But in the course of Verizon's inquiry, Williams told several blatant lies about his conduct while on leave (see Def.'s Stmt. ¶¶ 56-57, 64-67), and Verizon was entitled to treat his egregious violation of the company's Code of Conduct as the serious infraction that it was, by opting to terminate his employment. Thus, to the extent that Williams asserts an interference claim with respect to his taking of FMLA leave and Verizon's ultimate termination of his employment, there is no evidence that would allow a reasonable jury to conclude that Verizon took "action with a reasonable tendency to 'interfere with, restrain, or deny' the 'exercise or attempt to exercise' an FMLA right" when it investigated Williams, or when it terminated him after he came back from leave that it had approved.
*196 Gordon , 778 F.3d at 165 (quoting 29 U.S.C. § 2615(a)(1) ).
C. Williams's Retaliation Claim Fails Because There Is Insufficient Evidence That Verizon Terminated Williams With A Retaliatory Motive
In addition to claiming interference, Williams has also framed the basic facts of this matter as a retaliation claim, as asserted in Count II of his complaint. (See Am. Compl. ¶ 52 (alleging that Williams "engaged in protected activity when he requested FMLA leave from Verizon on March 7, 2014 and March 8, 2014"); id. ¶ 53 ("Verizon then retaliated against [Williams] for taking this leave, when they terminated him on May 9, 2014, when Verizon accused him without any medical documentary evidence of feigning his illness and that he lied to them during their investigations.").) Because Verizon has put forward a legitimate, non-discriminatory reason for its adverse action-namely, that Williams lied during the investigation-"the question [of] whether the employee actually made out a prima facie case is no longer relevant and thus disappears and drops out of the picture," Brady , 520 F.3d at 493 (internal quotation marks and citations omitted), and Verizon's arguments about Williams's lack of a prima facie showing are not pertinent to the analysis (see Def.'s Mem. at 18-19). Instead, the Court begins with the analysis of Verizon's proffered reason for Williams's termination, and concludes that Williams's retaliation claim cannot proceed to trial, because Williams has not provided sufficient evidence to support a reasonable inference that Williams's deceptiveness was not the real reason for his termination and that Verizon terminated him in retaliation for the FMLA leave that he had taken. See Walker , 798 F.3d at 1093.
1. Verizon Has Articulated A Legitimate, Non-Retaliatory Reason For Williams's Termination
Verizon has put forward an undoubtedly legitimate, non-retaliatory reason for its termination of Williams's employment: that it fired Williams "for lying about his whereabouts and misrepresenting facts during an investigation." (Def.'s Stmt. ¶ 68.) Notably, Williams does not dispute that he knowingly told Verizon that he was at home sick in bed on March 7, 2014, when in fact he was on his way to New Orleans. (See id. ¶¶ 73-74; see also Pl.'s Opp'n at 1.) Moreover, as mentioned above, Verizon's Code of Conduct specifically states that employees must "be honest and forthcoming at all times during an investigation[,]" and prohibits employees from "[m]isrepresenting facts or failing to disclose facts during an investigation[.]" (Id. ¶ 73 (quoting Verizon Code of Conduct at 10); see also Termination Letter at 2.) Consequently, Verizon had a valid reason for terminating Williams's employment that had nothing to do with any alleged retaliation for Williams's having previously taken FMLA leave. See Thomas , 227 F.Supp.3d at 104-08 (finding employee's ethical violation to be a legitimate reason for termination in a FMLA retaliation case); Ghawanmeh v. Islamic Saudi Acad. , 857 F.Supp.2d 22, 40-41 (D.D.C. 2012) (finding, among others, that employee's violation of employer's regulations and dishonesty about health status were legitimate reasons for termination in a FMLA retaliation case); see also Williams v. Chertoff , 495 F.Supp.2d 17, 35 (D.D.C. 2007) (noting, in the discrimination context, that "[t]he most common legitimate reason on which an employer might rely in disciplining an employee would be that the employee had violated an employment regulation or policy").
*197 2. Williams Has Not Shown That Verizon's Reasons for Terminating Him Were Pretextual
Because Verizon has articulated a valid non-retaliatory reason for terminating Williams, the central inquiry is whether Williams's evidence "creates a material dispute on the ultimate issue of retaliation 'either directly by showing that a discriminatory reason more likely motivated [Verizon] or indirectly by showing that [Verizon's] proffered explanation is unworthy of credence.' " Jones v. Bernanke , 557 F.3d 670, 678 (D.C. Cir. 2009) (quoting U.S. Postal Serv. Bd. of Governors v. Aikens , 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) ); see Adeyemi v. District of Columbia , 525 F.3d 1222, 1226 (D.C. Cir. 2008) (noting that the crucial question at this step is whether the plaintiff has produced sufficient evidence "that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis"). Williams primarily relies on the latter tack by suggesting that Verizon's reason for his termination was not the real reason, but he makes little headway in this regard.
To begin with, it is difficult for Williams to show that Verizon's proffered reason for terminating him is "unworthy of credence[,]" Jones , 557 F.3d at 678 (internal quotation marks and citation omitted), when he admits to much of the underlying behavior on which Verizon based his termination-he does not dispute that he was traveling to New Orleans when he requested FMLA leave for March 7 and 8, 2014 (see Def.'s Stmt. ¶¶ 32-36, 44, 66), nor does he maintain that he was truthful during Verizon's investigation of his whereabouts (see id. ¶¶ 73-74; see also Pl.'s Opp'n at 1 (accepting that "Williams lied during his investigation.") ). See Waterhouse v. District of Columbia , 298 F.3d 989, 995 (D.C. Cir. 2002) ("Because [plaintiff] did not contravene-and in fact admitted-many of the deficiencies the defendants cited concerning her performance, she failed to establish that her employer's proffered explanation [was] unworthy of credence." (internal quotation marks and citations omitted) ). Although Williams maintains that he was in fact ill, and thus "had an unforeseeable FMLA valid leave request" regardless of where he was physically located (Pl.'s Opp'n at 16), to the extent that he does not deny that he was traveling during his requested leave and was subsequently dishonest regarding his conduct during his leave, Williams has not cast any real doubt on the genuineness or reasonableness of Verizon's stated beliefs about his conduct. See Fischbach v. D.C. Dep't of Corr. , 86 F.3d 1180, 1183 (D.C. Cir. 1996) (stating that the issue in establishing pretext is "not the correctness or the desirability of the reasons offered ... [but] whether the employer honestly believes in the reasons it offers[,]" and it is insufficient to merely "show that a reason given for a job action is not just, or fair, or sensible" (internal quotation marks and citations omitted) ); Brady , 520 F.3d at 495 (holding that "there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts" if the belief is reasonable).
Thus, Williams appears to base his pretext argument on the contention that Verizon "deviat[ed] from [its] usual progressive discipline policy" in terminating him, and that, absent a retaliatory motivation, Verizon would have simply suspended him, as it has previously done with other employees. (Pl.'s Opp'n at 16.) It is true that if Williams can show "an unexplained inconsistency" between how Verizon treated him versus other similarly situated Verizon employees, such an inconsistency could potentially "justify an inference of [unlawful]
*198 motive." Lathram v. Snow , 336 F.3d 1085, 1093 (D.C. Cir. 2003). But Williams has failed to demonstrate any such inconsistency here.
In this regard, Williams relies solely on two affidavits from two union stewards, Drucilla Jones and Derrick Griffin. (See Aff. of Drucilla Jones ("Jones Aff."), Ex. C to Pl.'s Opp'n, ECF No. 30-3; Aff. of Derrick Griffin ("Griffin Aff."), Ex. D to Pl.'s Opp'n, ECF No. 30-4.) Both affidavits contain bald assertions about Verizon's so-called progressive discipline policy, past practices with respect to other employees involved in misconduct, and the alleged irregularity of Verizon's treatment of Williams. (See, e.g. , Jones Aff. ¶ 12 ("Verizon had a practice of simply suspending employees for acts worse than that attributed to [ ] Williams."); Griffin Aff. ¶ 18 ("[Williams's] termination was a clear departure from Verizon's progressive discipline policy.").) But neither provides the specificity required to give rise to an inference that the referenced facts and circumstances actually pertain to similarly situated employees who were treated more favorably by Verizon than Williams was treated in this case.
As an initial matter, neither affidavit does more than merely assert that Verizon ordinarily employs a "progressive discipline policy," pursuant to which it suspends derelict employees but does not fire them. (Jones Aff. ¶ 8; Griffin Aff. ¶ 8.) In fact, Jones's affidavit specifically recognizes that Verizon "did not have a written policy for suspension[,]" and no such policy or practice is contained in Verizon's collective bargaining agreement with the union. (Jones Aff. ¶ 8; see also Def.'s Reply at 11 (maintaining that neither Verizon's Code of Conduct nor the collective bargaining agreement requires progressive discipline).) Griffin's affidavit purports to explain that his "knowledge and familiarity" with Verizon's progressive discipline policy comes from "attend[ing] a three[-]day training" on the grievance and termination process that the union conducts (Griffin Aff. ¶ 8), but does not cite any source that shows that Verizon actually has such a policy, much less that it has taken the position that the company will not terminate employees who lie during an investigation of potential fraud pertaining to approved FMLA leave. In fact, Verizon's Code of Conduct appears to belie the claim that Verizon has a progressive discipline policy with respect to violations of the Code, because it specifically states that termination can result from violating company policy as set forth in the Code. (Verizon Code of Conduct at 8 ("Failure to comply with any provision of this Code or company policy is a serious violation and may result in disciplinary action, up to and including termination of employment [.]" (emphasis added) ).) See Long , 263 F.Supp.3d at 286 (rejecting the argument that the employer's given reason her termination was pretextual based on its failure to follow an alleged "progressive discipline policy" where "the record ma[de] it clear that [the employer] was not wedded to a strict" policy and the staff handbook permitted termination without first employing other measures).
Nor do Jones's or Griffin's affidavits provide any competent comparator evidence to show that Williams was actually treated differently than anyone else. See Neuren v. Adduci, Mastriani, Meeks & Schill , 43 F.3d 1507, 1514 (D.C. Cir. 1995) (holding that the plaintiff must "demonstrate that all of the relevant aspects of her employment situation were 'nearly identical' to those of the [comparator]" in order to demonstrate pretext in a Title VII discrimination case). Jones's affidavit states generally that, "[i]n my 35 years' experience as a union steward representing Verizon employees, I have full and *199 personal knowledge of employees who have been terminated under our grievance policy and Verizon has not terminated any employee for a lie or misrepresentation during a grievance or company hearing," and thus, "Williams's "termination was a deviation from [Verizon's] policy." (Jones Aff. ¶ 7.) But Jones does not provide the titles or roles of the employees she references, and she omits the specific misrepresentations these supposedly similar employees made, as well as the facts and information upon which her knowledge of their treatment is based. See Carter v. Rubin , 14 F.Supp.2d 22, 39 (D.D.C. 1998) (finding that a declaration asserting that plaintiff was treated differently from others engaging in similar conduct was not probative of plaintiff's discrimination and retaliation claims because it "fail[ed] to reference any other [employee] specifically"). Similarly, although Jones makes the blanket statement that Verizon employees are "not terminated for ... falsifying FMLA leave" (Jones Aff. ¶ 9), she includes no facts regarding comparable employees who lied about their leave, making an assessment of their similarities or dissimilarities to Williams's case impossible. See Holbrook v. Reno , 196 F.3d 255, 261 (D.C. Cir. 1999) (holding that a plaintiff who relies on alleged comparators to show discrimination must demonstrate that the comparators were "charged with offenses of comparable seriousness" to show similarity of situation (internal quotation marks and citation omitted) ). Jones's statement that "[i]t is my opinion that Verizon interfered or retaliated against Williams for using FMLA leave" (Jones Aff. ¶ 13) fares no better; such a contention is conclusory, and therefore insufficient to cast doubt on Verizon's stated, non-retaliatory explanation for Williams's termination. See Greene v. Dalton , 164 F.3d 671, 675 (D.C. Cir. 1999) (noting that "[a]ccepting [ ] conclusory allegations as true ... would defeat the central purpose of the summary judgment device"); Ransom v. Ctr. For Nonprofit Advancement , 514 F.Supp.2d 18, 27 (D.D.C. 2007) (finding testimony that consisted of "vague and conclusory argument without factual support" insufficient to show pretext because the statements merely stated that the employer's actions were discriminatory, without citing any "actual evidence").
The affidavit from Griffin, who accompanied Williams to his investigatory interviews (see Griffin Aff. ¶ 15), also falls far short of providing adequate support for its contention that Williams's termination "was a clear departure from Verizon's progressive discipline policy" (id. ¶ 18). Griffin's sworn statement says little more than that, insofar as it contains no information about any other specific instances of discipline by the company that could possibly form the basis of Griffin's conclusion that Verizon has a policy that it departed from with respect to Williams. And there is nothing in the record that Griffin (or Jones, for that matter) is or ever was a Verizon executive, and thereby has the power to announce that the policy of the company is that Williams "should have been suspended for a period of days," rather than terminated. (Id. ¶ 17.) So, it is clear to this Court that, without more, the affidavits of Jones and Griffin cannot "by [themselves] create a disputed question of material fact concerning pretext[.]" Miles , 653 Fed.Appx. at 9 ; Johnson v. Perez , 823 F.3d 701, 710 (D.C. Cir. 2016) ("Courts may grant summary judgment to a defendant where a plaintiff's evidence is vague or conclusory.").
It is also notable that Verizon has gone above and beyond to highlight the deficiency of Williams's showing, by providing evidence that specifically rebuts any claim that Williams faced inconsistent treatment in regard to his termination. Contrary to *200 Jones's and Griffin's vague perception that Verizon allows its employees to make fraudulent misrepresentations without being fired, it appears that Verizon has terminated employees who are also "in the Potomac bargaining unit" (to which Williams belongs) for "providing false and misleading information during an investigation in violation of the Code of Conduct." (Def.'s Stmt. ¶ 75; see also Verizon Termination Letters, Ex. A-F to Decl. of Miriam T. Brooks, ECF No. 28-14, at 5-16.) And Williams's only objection to paragraph 75 of Verizon's statement of undisputed material facts is the contention that "[h]is discipline was a deviation from their normal practice per the affidavit[s] of Drucilla Jones and Derrick Griffin[.]" (Pl.'s Stmt. ¶ 75.) As such, Williams merely maintains that the Jones and Griffin affidavits ought to be given more weight than the facts that are reflected in these company documents. However earnest, Williams's own assessment of the relevant strength of the parties' evidence is not important; what matters is whether a reasonable jury could conclude that Williams's termination was an anomaly because employees are never terminated for lying in an investigation as he did, and based on Verizon's exhibits and the paucity of information in Williams's affidavits, this Court concludes that it could not.
Notably, even assuming, arguendo , that Verizon departed from previous practice in regard to Williams's termination, that alone may still not be enough to show pretext. Cf. Johnson v. Lehman, 679 F.2d 918, 922 (D.C. Cir. 1982) (noting, in the discrimination context, that even where an employer has failed to follow its own established regulations, that alone is merely probative, and may not be sufficient to establish a forbidden intent). Because Verizon's written policy explicitly states that termination may result for employees who violate its Code of Conduct (see Verizon Code of Conduct at 8), the mere fact that Verizon could have taken a different approach-i.e., suspended him instead of terminated him-would not be sufficient to show pretext, and this is especially so in the absence of robust comparator evidence. See Wilkerson v. Wackenhut Protective Servs., Inc. , 813 F.Supp.2d 61, 67 (D.D.C. 2011) (rejecting the idea that a plaintiff can "establish pretext by contending that [the employer] could have, but did not, impose progressive discipline, especially when [the employer's] policy permitted swift and severe punishment for a single [violation]" (internal citation omitted) ); cf. Sharif , 841 F.3d at 206 (rejecting the claim that the "severity of the consequence [the employee] received is evidence of pretext").
The bottom line is this: when evaluating a retaliation claim at the summary judgment stage, the court must "consider all the evidence, taken together," and assess whether it is sufficient to support a reasonable inference of retaliation. Jones , 557 F.3d at 678. Thus, even for plaintiffs who create some genuine issue of material fact as to pretext, not every one "will always be deemed to have presented enough evidence to survive summary judgment." Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1290 (D.C. Cir. 1998) (en banc). So it is here. Even when the evidence is viewed in the light most favorable to Williams, see Tolan , 134 S.Ct. at 1866, "the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision," and Williams has, at best, "created only a weak issue of fact as to whether the employer's reason was untrue[,]" Reeves v. Sanderson Plumbing Prod., Inc. , 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In other words, Williams has not provided evidence that would be sufficient for a reasonable jury to conclude that Verizon's stated reasons for firing him was *201 mere pretext; therefore, his retaliation claim fails as a matter of law. See, e.g., Thomas , 227 F.Supp.3d at 111 ; Long , 263 F.Supp.3d at 288.
IV. CONCLUSION
For the reasons explained above, this Court finds that Williams has not adduced sufficient evidence to support his claim that Verizon interfered with, or otherwise attempted to restrain, any exercise of his rights protected by the FMLA, and the Court also concludes that no reasonable jury could find based on the instant record evidence that Verizon terminated Williams with a retaliatory motive. Therefore, as set forth in the accompanying order, Verizon's motion for summary judgment will be GRANTED , and judgment will be entered in Defendant's favor on all claims.