**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-6287**

WILLIAM D. BATTLE, III,

        Plaintiff - Appellant,

      v.

J. LEDFORD, Correctional Officer; R. EDWARDS, Correctional Officer; GREGORY HOLLOWAY, Warden of Wallens Ridge State Prison; GEORGE HINKLE, Regional Administrator for Virginia Department of Corrections,

        Defendants - Appellees.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Elizabeth Kay Dillon, District Judge. (7:16-cv-00020-EKD-RSB)

Argued: September 25, 2018                Decided: January 8, 2019

Before MOTZ, DUNCAN, and THACKER, Circuit Judges.

Vacated and remanded by published opinion. Judge Motz wrote the opinion, in which Judge Duncan and Judge Thacker joined.

**ARGUED:** Sarah Crandall, Elizabeth Joynes, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. Michelle Shane Kallen, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Joseph Charlet, Third Year Law Student, Megan Keenan, Third Year Law Student, Evan Ward, Third Year Law Student, Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. Mark R. Herring, Attorney General, Trevor S. Cox, Acting Solicitor General,

Laura H. Cahill, Assistant Attorney General, Matthew R. McGuire, Deputy Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

DIANA GRIBBON MOTZ, Circuit Judge:

The Prison Litigation Reform Act requires a prisoner to exhaust administrative remedies before filing suit. When a prisoner filed this action under 42 U.S.C. § 1983 after exhausting those remedies, the district court held the statute of limitations barred his suit. For the reasons that follow, we vacate and remand for further proceedings consistent with this opinion.

I.

William D. Battle, III, entered Wallens Ridge State Prison in Roanoke, Virginia, on December 6, 2013. After Battle completed the inmate intake process, corrections officers J. Ledford and R. Edwards (collectively, "the officers") escorted him to his assigned housing unit. A physical altercation between Battle and the officers occurred along the way.

The officers subsequently filed a disciplinary report against Battle. They charged that Battle, who was restrained in handcuffs and leg irons during the transfer, used his body to push one of the officers into a food cart. According to the officers, they subdued Battle by "plac[ing]" him on the ground. Battle disputed this account before a prison hearing administrator. He denied shoving any officer and instead claimed that a pain in his ankle caused him to trip. He stated that the officers responded with unnecessary violence: pulling his hair and slamming his head into the concrete floor, causing "bruising, lacerations, [and] swelling of the face." Battle requested that the hearing administrator examine video footage of the incident to corroborate his account.

3

The hearing administrator declined to do so; instead, he simply credited the officers' version of the incident. After unsuccessfully appealing this decision to the prison's chief warden, Battle submitted a second appeal to the regional corrections administrator. On February 27, 2014, the regional administrator rejected Battle's claim and issued a form confirming that Battle had reached the "last level of appeal for this grievance." A total of 83 days had passed since the altercation.

On January 11, 2016 — two years and 36 days after the altercation — Battle completed a postage request for a pro se § 1983 complaint alleging the officers used excessive force against him, in violation of the Eighth and Fourteenth Amendments.[1] The parties accept that this postage request establishes the filing date.

The officers moved for summary judgment, arguing that Battle filed outside Virginia's two-year statute of limitations applicable to § 1983 claims filed within the jurisdiction. *See* Va. Code Ann. § 8.01-243(A) (setting limitations for personal injury actions). Battle countered that his complaint was timely because 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") required him to exhaust available administrative remedies before bringing a § 1983 claim. He argued that the 83 days during which he participated in the required exhaustion should be tolled under two

---

[1] Battle's complaint also named corrections administrators Gregory Holloway and George Hinkle as defendants. The district court held that Battle failed to state a claim against these two officials. Battle does not appeal their dismissal.

4

Virginia statutes and federal law, thus extending his filing deadline to February 27, 2016.[2]

The first state statute on which Battle relied, Va. Code § 8.01-229(K), suspends the statute of limitations for personal injury actions during criminal proceedings. The second, Va. Code § 8.01-195.3(7), governs actions brought under the Virginia Tort Claims Act ("VTCA") and tolls the time for filing a claim notice during the pendency of a prison grievance process. Additionally, Battle relied on federal equitable tolling law.

The district court considered only Battle's argument as to Va. Code § 8.01-229(K). It held that statute could not be used to toll Battle's limitations period because a "prison disciplinary proceeding is not a criminal prosecution." *Battle v. Ledford*, No. 7:16CV00020, 2017 WL 432822, at *3 n.5 (W.D. Va. Jan. 30, 2017) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). The court then granted the officers' motion for summary judgment, concluding that Battle filed his complaint 36 days too late.

On appeal, Battle concedes that the district court properly rejected his claim under Va. Code Ann. § 8.01-229(K). He maintains, however, that the court overlooked his claims of state statutory tolling under the VTCA and federal equitable tolling, and so erred in deeming his complaint time-barred.

We review a district court's grant of summary judgment de novo. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Summary judgment is appropriate

---

[2] Battle explained in a related affidavit that he understood from a prisoners' rights pamphlet that the exhaustion of administrative remedies required by the Prison Litigation Reform Act mandated tolling, but could not easily verify the proposition because he had limited access to the law library.

only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## II.

Congress did not provide fixed timing rules in § 1983 or its companion provision, § 1988.[3] Instead, Congress specified that gaps in § 1983 "should be filled by state law, as long as that law is not inconsistent with federal law." *Hardin v. Straub*, 490 U.S. 536, 538 (1989).

The Supreme Court has directed that we apply a state's "statute of limitations governing general personal injury actions" when considering § 1983 claims. *Owens v. Okure*, 488 U.S. 235, 251 (1989). A state's limitations and tolling rules are to be followed unless doing so "defeat[s] either § 1983's chief goals of compensation and deterrence or its subsidiary goals of uniformity and federalism." *Hardin*, 490 U.S. at 539 (footnote omitted). If Virginia law allows tolling of Battle's limitations period, that ends the inquiry. *See id.* at 543 (establishing that states may grant extensions to prisoners

---

[3] Section 1988 provides that where a § 1983 cause of action is

> deficient in the provisions necessary to furnish suitable remedies, . . . the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is *not inconsistent with the Constitution and laws of the United States*, shall be extended to and govern the said courts in the trial and disposition of the cause[.]

42 U.S.C. § 1988(a) (emphasis added).

6

consistent with § 1983). If not, Battle's claim may survive only if federal equitable principles apply to his case.

A.

Virginia lacks a generally applicable statute that pauses limitations to accommodate administrative exhaustion requirements. *See* Va. Code Ann. § 8.01-229 (enumerating eleven unrelated exceptions suspending tolling limitations periods).[4] Battle thus asks us to borrow a tolling provision in the Virginia Tort Claims Act. He does so on the theory that he could have brought suit under that law for the same actions against the same parties.

To bring suit under the VTCA, a person must provide a notice of claim to the state "within one year after the cause of action accrues" as a precursor to litigation. Va. Code Ann. § 8.01-195.7. The claimant must file a complaint in court "within 18 months of the filing of the notice of claim, or within two years after the cause of action accrues." *Id.* If the claimant is a state prisoner, the VTCA provides that the "time for filing the notice of

---

[4] We note that Virginia does have its own statute, the Virginia Prisoner Litigation Reform Act ("VPLRA"), which directly addresses the interaction of limitations and exhaustion. Va. Code Ann. § 8.01-243.2 provides:

> No person confined in a state or local correctional facility shall bring or have brought on his behalf any personal action relating to the conditions of his confinement until all available administrative remedies are exhausted. Such action shall be brought by or on behalf of such person within one year after cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later.

This provision does not control Battle's § 1983 action because the Supreme Court has unequivocally held that personal injury limitations periods apply to § 1983 claims. *See Owens*, 488 U.S. at 251; *Wilson v. Garcia*, 471 U.S. 261, 280 (1985).

7

tort claim shall be tolled during the pendency of the grievance procedure." Va. Code Ann. § 8.01-195.3(7).

The VTCA does not save Battle's claims for two reasons. First, the VTCA operates on a tighter schedule than § 1983. It gives a plaintiff only one year to assert his rights, plus exhaustion. The VTCA's tolling provision would thus afford Battle one year and 83 days to take legal action.

Second, and more fundamentally, the VTCA does not govern suits against state employees like the one Battle brings here. Rather, it provides a limited waiver of sovereign immunity that "applies to one type of litigation, tort actions against the Commonwealth." *Ogunde v. Virginia*, 628 S.E.2d 370, 373 (Va. 2006). But § 1983 does the reverse: it applies only to state officials, not states themselves. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Because Battle could not have substituted a VTCA claim for a § 1983 action, the VTCA's tolling provision cannot be integrated into the federal scheme.

## B.

When state statutory tolling rules provide no relief to a prisoner seeking to bring a § 1983 claim, some courts have turned to state equitable tolling rules to suspend limitations during the mandated exhaustion period. *See Heck v. Humphrey*, 997 F.2d 355, 358 (7th Cir. 1993) (applying state equitable tolling to suspend limitations period for § 1983 plaintiff seeking to bring habeas claim), *aff'd on other grounds*, 512 U.S. 477 (1994); *Rodriguez v. Holmes*, 963 F.2d 799, 804–05 (5th Cir. 1992) (same).

8

Under Virginia law, equitable estoppel provides the only arguable exception to the Commonwealth's general rule against "recogniz[ing] any non-statutory basis for tolling" limitations. *City of Bedford v. James Leffel & Co.*, 558 F.2d 216, 217 (4th Cir. 1977) (internal quotation marks omitted); *see also Casey v. Merck & Co.*, 722 S.E.2d 842, 845 (Va. 2012) ("A statute of limitations may not be tolled, or an exception applied, in the absence of a clear statutory enactment to such effect." (internal quotation marks omitted)).

To invoke equitable estoppel under Virginia law, a plaintiff must prove, *inter alia*, that the "party claiming estoppel was misled to his injury" by the defendant in a way that prevented timely filing. *Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 266 S.E.2d 887, 890 (Va. 1980). The corrections officers did not mislead Battle as to his injury or the accrual date by operation of the prison administrative review process. Accordingly, as each party acknowledges, Battle cannot invoke the doctrine.

Battle further concedes that no other Virginia common law rule could save his claim.

III.

A.

With no Virginia rule available to toll the limitations period, we must determine whether refusal to do so during a prisoner's mandatory exhaustion period is "consistent with federal law and policy." *Owens*, 488 U.S. at 239.

9

When a court borrows a state rule "to assist in the enforcement of [a] federal remedy," the federal interest always controls. *Wilson*, 471 U.S. at 269. This is so because "the policies and purposes of the States" do not constitute "the primary office of the borrowing provision in § 1988," which governs § 1983 actions. *Id.* Rather, § 1988 "is designed to assure that neutral rules of decision will be available to enforce the civil rights actions, among them § 1983." *Id.* Thus, it is the "duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 367 (1977).

But to be held "inconsistent" with § 1983, a state rule must do more than "cause[] the plaintiff to lose the litigation." *Robertson v. Wegmann*, 436 U.S. 584, 593 (1978). The state rule must "defeat either § 1983's chief goals of compensation and deterrence or its subsidiary goals of uniformity and federalism." *Hardin*, 490 U.S. at 539 (footnote omitted). If a state's timing requirement contravenes one or more of these goals, it is "inconsistent with federal law," and § 1988 bars us from adopting it. *Id.* at 538.

The Supreme Court has explained that it is inconsistent with § 1983's policies to apply "a state statute of limitations" to require a litigant "to refrain from commencing a civil action until it has discharged" a process mandated by federal law. *Occidental*, 432 U.S. at 367–68. "For the State's wisdom in establishing a general limitation period could not have taken into account the decision of Congress to delay judicial action" while the litigant "performs its administrative responsibilities." *Id.* (internal quotation marks omitted). The Court has further suggested that tolling of § 1983 limitations may be

necessary where a remedy "is structured to require previous resort to state proceedings, so that the claim may not even be maintained in federal court unless such resort be had." *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 490 (1980). The Court has even warned that the imposition of an "exhaustion requirement might result in the effective repeal of § 1983" if "statutes of limitations are not tolled pending exhaustion." *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 514 n.17 (1982).

B.

With this precedent in mind, we consider its application to the case at hand.

Virginia law provides an elaborate administrative grievance process for prisoner complaints. Exhaustion of this remedy involves at least three levels of review. *See* VDOC OP 866.1(IV-VI) (describing emergency grievance review, review of informal complaints, and three-stage review of formal complaints). A prisoner has 30 days to submit a formal grievance, and corrections administrators are then given another 180 days to resolve the grievance.[5] *See id.*

Given this structure, Virginia's no-tolling rule, as applied to prisoners seeking to bring § 1983 claims, frustrates the goals of § 1983 and is thus clearly "inconsistent" with settled federal policy. *Hardin*, 490 U.S. at 538.

---

[5] Virginia's corrections regulations exempt sexual abuse allegations from the 30-day filing requirement so that vulnerable victims may press their claims once it is safe for them to do so. VDOC OP 866.1(VI)(A)(1)(c). Absent tolling, this policy could have the unintended effect of substantially reducing a prisoner's § 1983 filing time when bringing a serious abuse claim against a corrections officer.

First, application of the no-tolling rule would frustrate the purpose of compensating prisoners who have sustained constitutional injuries. Under Virginia regulations — as implemented by state officials — as much as seven months could be subtracted from the period in which a prisoner can file a federal claim. This inevitable and indeterminate reduction in limitations would be wholly contingent on the efficiency of administrators and the complexity of the case. And as other circuits have noted and common sense suggests, a state's grievance process may extend beyond the state's regulatory deadlines. *See, e.g.*, *Brown v. Valoff*, 422 F.3d 926, 932–34 (9th Cir. 2005) (describing grievance process lasting 2 years and 10 months from injury to investigation report); *see also Gonzalez v. Hasty*, 651 F.3d 318, 323 (2d Cir. 2011) ("[T]he time for achieving a resolution under the PLRA could be considerably longer than 140 days. . . . [I]t is certainly possible that a full three years could pass while an inmate exhausts his administrative remedies."). Far from advancing compensation, a no-tolling rule would amount to a penalty in which incarcerated persons — subject to severe state control and often limited in access to legal resources — would receive less time to vindicate § 1983 claims than all other litigants.

Application of a no-tolling rule here would also fail to serve § 1983's second primary goal — deterrence. Instead, this rule would enable state officials to shrink a prisoner's filing window and so limit his opportunity to bring a claim. In this way, a no-tolling rule would even create perverse incentives for prison commissioners to extend regulatory deadlines and for wardens and investigators to stall in their review of

12

individual grievances, for doing so might limit government officials' legal exposure.[6] As the Seventh Circuit has observed, no-tolling rules thus encourage prison officials to run out the clock and "exploit the exhaustion requirement through indefinite delay in responding to grievances." *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (internal quotation marks omitted).

Nor would the no-tolling rule advance § 1983's subsidiary interest in uniformity. Of course, Virginia's rule would set a consistent two-year period between accrual and the limitations deadline across claims, furthering uniformity in this formalistic respect. But a rule that calculates the limitations deadline from the date of exhaustion is just as "firmly defined" and "easily applied." *Wilson*, 471 U.S. at 270 (quoting *Chardon v. Fumero Soto*, 462 U.S. 650, 667 (1983) (Rehnquist, J., dissenting)). Moreover, a no-tolling rule would destroy any semblance of meaningful uniformity by creating dramatic claim-to-claim variance in the actual filing time available to different § 1983 litigants. Between prisoners, a no-tolling rule would afford a prisoner whose grievance was processed with delay less time to file than one whose grievance received speedy resolution. It would also create a disparity between those who are incarcerated and those who are not. For example, if the injuries claimed here had occurred in the context of an arrest rather than a prison escort, Battle would have been guaranteed a full two years to file his § 1983 suit, rather than the abbreviated period he would receive under a no-tolling rule. Such

---

[6] We do not discern or suggest any bad faith or intentional delay by prison officials in Battle's case. Our point is only that this is possible absent tolling.

sweeping and arbitrary deviations in procedural rights would hardly advance a policy of uniformity.

Finally, we also cannot even say that accepting Virginia's no-tolling rule would foster federalism interests. This is so because the Commonwealth itself has adopted two statutes, the VTCA and VPLRA, that toll prisoner exhaustion periods. *See* Va. Code Ann. §§ 8.01-195.7, 8.01-243.2. Although neither provides relief to prisoners seeking to bring § 1983 claims, their enactment demonstrates that Virginia otherwise has adopted a policy of tolling limitations while prison administrators review inmate claims. These statutes also make clear that an exhaustion reprieve does not conflict with Virginia's "important and salutary purpose" in strictly construing statutes of limitations, which is to protect defendants from "unscrupulous plaintiffs who hoard evidence that supports their position while waiting for their prospective opponents to discard evidence that would help make a defense." *Burns v. Stafford Cty.*, 315 S.E.2d 856, 859 (Va. 1984). Administrative exhaustion does the opposite: it notifies defendants of a potential claim and allows both parties to develop a record before coming to court.

In sum, because Virginia's no-tolling rule is inconsistent with federal law and policy, we cannot apply it here.

C.

Notwithstanding this analysis, the officers contend that Virginia's no-tolling rule necessarily comports with federal policies because a separate federal law — the PLRA — imposes the relevant exhaustion requirement. But by enacting the PLRA, Congress did not endorse such a no-tolling rule or diminish the interests underlying § 1983. To so

14

conclude would be to overread the PLRA's silence on tolling, misread the PLRA's purpose, and ignore the text of § 1983 and § 1988.

First, the silence in the PLRA. It is a cardinal rule that "repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest." *Hui v. Castaneda*, 559 U.S. 799, 810 (2010) (internal quotation marks omitted). Nothing in the text of the PLRA suggests that Congress sought to limit or modify § 1988(a)'s express command that borrowed provisions of state law must be consistent with important, long-recognized federal policies. The PLRA's legislative history is also silent as to § 1988(a)'s borrowing framework and the Court's interpretation thereof. The conference reports, floor debates, and committee hearings contain no discussion of the pressure that mandatory exhaustion would exert on § 1983's state-derived limitations rule absent tolling. *See generally* Bernard D. Reams & William H. Manz, *A Legislative History of the Prison Litigation Reform Act of 1996, Pub. L. No. 104–134, 110 Stat. 1321* (1997). When confronted with statutory silence, we must "presume that Congress is aware of the legal context in which it is legislating." *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 335 n.4 (4th Cir. 2008) (internal quotation marks omitted).

Nor do we see any indication that Congress intended, through the PLRA, to amend or override the specific federal policies underlying § 1983 and incorporated into § 1988(a). Instead, as the Supreme Court has explained, it is "[b]eyond doubt" that Congress enacted the PLRA's exhaustion requirement "to reduce the quantity and improve the quality of prisoner suits" by allowing officials the opportunity to take

15

"corrective action" and ideally "obviating the need for litigation." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002); *see also McLean v. United States*, 566 F.3d 391, 397 (4th Cir. 2009) ("The purpose of the PLRA was not, however, to impose indiscriminate restrictions on prisoners' access to the federal courts.").

Senator Kyl, the lead Senate sponsor of the PLRA, explained that an exhaustion requirement would "free up judicial resources for claims with merit by both prisoners and nonprisoners" alike by winnowing meritless claims. 141 Cong. Rec. S7526 (daily ed. May 25, 1995) (statement of Sen. Kyl). Similarly, the lead House sponsor, Rep. LoBiondo, described mandatory exhaustion as promoting more efficient resolution of prisoner problems and ensuring "some degree of fact-finding so that when or if the matter reaches Federal court there will be a record upon which to proceed in a more efficient manner." 141 Cong. Rec. H14105 (daily ed. Dec. 6, 1995) (statement of Rep. LoBiondo). He further characterized mandatory exhaustion as a tool to filter frivolous claims so "only those claims with a greater probability . . . of success would, presumably, proceed." *Id.*

Each of these goals entirely accords with those underlying § 1983, and neither statute is served by allowing mandatory exhaustion to chip away at a prisoner's limitations period. Rather, as several of our sister circuits have recognized, refusal to toll limitations during the PLRA's mandatory exhaustion period would trap prisoners in a "catch-22": one "who files suit . . . prior to exhausting administrative remedies risks dismissal based upon § 1997e [of the PLRA]; whereas the prisoner who waits to exhaust his administrative remedies risks dismissal based upon untimeliness." *Gonzalez*, 651

16

F.3d at 323 (quoting *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001)); *accord Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 602 (3d Cir. 2015).

As previously noted, the Supreme Court expressed a similar concern well before enactment of the PLRA. The Court made plain that imposing a mandatory exhaustion requirement *without* tolling limitations during the exhaustion period could "result in the effective repeal of § 1983." *Patsy*, 457 U.S. at 514 n.17. The text and legislative history of the PLRA offer no indication that Congress intended to effect such a repeal. Because the PLRA does no more than require exhaustion before filing suit, we cannot read it to amend § 1983's well-established policy objectives, as incorporated into § 1988(a).

IV.

Because we hold that Virginia's no-tolling rule is inconsistent with § 1983, we must determine a proper remedy. Battle asks that we apply federal equitable tolling principles to account for the time lost during his 83-day mandatory exhaustion period. We agree with Battle (and our sister circuits) that those principles apply during this period.

Equitable tolling is "reserved for 'those rare instances where — due to circumstances external to the party's own conduct — it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Raplee v. United States*, 842 F.3d 328, 333 (4th Cir. 2016) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). The Supreme Court has explained that "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that

17

he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Holland v. Florida*, 560 U.S. 631, 653 (2010) (clarifying that "[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence" (internal citation and quotation marks omitted)).

Given these principles, the Supreme Court and this court have found equitable tolling inappropriate where a plaintiff unnecessarily waits to file one claim that does not require exhaustion while exhausting administrative remedies required for a different cause of action. *See Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 465–66 (1975) (declining to toll limitations for § 1981 claims during exhaustion required for separate Title VII remedy); *Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 661 (4th Cir. 2018) (declining to toll limitations for Rehabilitation Act claims where litigant "could have timely filed [those] claims without completing the administrative process as to her [Americans with Disabilities Act] claims").

In contrast, equitable tolling is appropriate in the narrower context presented here. First, Battle showed reasonable diligence during the 83-day exhaustion period. He promptly denied the disciplinary charge against him and then underwent two rounds of appeals, properly pursuing the process through to the "last level." Second, during this administrative process, an extraordinary circumstance "stood in [the] way" of filing suit. *Holland*, 560 U.S. at 649 (internal quotation marks omitted). Unlike the litigants in *Johnson* and *Ott*, who remained free to file their § 1981 and Rehabilitation Act claims at any point after accrual, prisoners face a complete and absolute barrier to litigation of any

18

§ 1983 claim during their mandatory administrative grievance proceedings. And this barrier is far from ordinary. We are aware of no other federal statute in which a mandatory exhaustion requirement could erode a litigant's limitations period.[7] Under these circumstances, such a total and unusual barrier to filing constitutes an extraordinary circumstance.

Thus, every circuit that has confronted a state no-tolling rule and reached this question has applied federal law to equitably toll § 1983 limitations during the PLRA exhaustion period. *See Gonzalez*, 651 F.3d at 322–24; *Brown*, 422 F.3d at 942–43; *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). In addition to these three circuits that have expressly applied federal equitable tolling, four others have impliedly done so or suggested that this would be appropriate. *See Thompson v. Pitkins*, 514 F. App'x 88, 90 (3d Cir. 2013) ("Because exhaustion of prison administrative remedies is mandatory under the Prison Litigation Reform Act, the statute of limitations applicable to § 1983

---

[7] For example, the limitations period for habeas petitions by those in state custody, 28 U.S.C. § 2244(d)(1), does not begin to run until mandatory exhaustion of state remedies is complete, 28 U.S.C. § 2244(d)(2). And under numerous other statutes that require administrative review prior to filing suit, limitations run only after the agency's action is final. *See, e.g.*, 28 U.S.C. § 2401(b) (requiring filing of Federal Tort Claims Act suit within six months of agency's denial of claim); 42 U.S.C. § 2000e-5(f)(1) (requiring employee to file Title VII suit within 90 days of dismissal of administrative proceedings); 20 U.S.C. § 1415(i)(2)(B) (requiring litigants to file suit under Individuals with Disabilities Education Act within 90 days of hearing officer's decision, or as prescribed by state law); 8 U.S.C. § 1252(b)(1) (requiring noncitizens to seek judicial review of deportation orders within 30 days of conclusion of administrative proceedings). Notably, in considering a prior and identical version of § 1997e(a), the House Judiciary Committee explained that the exhaustion requirement was drafted to align "with administrative exhaustion rules that apply in other contexts." H.R. Rep No. 104-21, at 32 (1995).

actions may be tolled while a prisoner exhausts."); *Napier v. Preslicka*, 314 F.3d 528, 534 n.3 (11th Cir. 2002) ("We proffer, but do not hold, as that issue is not before us, that such a result may be mitigated by the doctrine of equitable tolling, as other circuits have applied that doctrine to the administrative exhaustion requirement for prison condition suits . . . ."); *Clifford v. Gibbs*, 298 F.3d 328, 333 (5th Cir. 2002) (granting "request to equitably toll limitations" during administrative proceedings); *Johnson*, 272 F.3d at 521 (agreeing with other circuits that "federal courts should toll state statutes of limitations while inmates exhaust their administrative remedies under § 1997e" while applying state tolling provision); *Heck*, 997 F.2d at 358 ("[A] body of state tolling law that lacks a provision for equitable tolling is inconsistent with the provision of a complete federal remedy under section 1983 and therefore is overridden by the federal doctrine.").

Tellingly, not one of these courts has required a claimant to prove additional extraordinary circumstances beyond the exhaustion requirement or to show constant diligence until the moment of filing, as the officers would have us do here. In fact, the Second Circuit even acknowledged "substantial delay arising from [the plaintiff]'s failure" to properly litigate the claim before it, but still equitably tolled the administrative grievance period in light of § 1983's well-established policies. *Gonzalez*, 651 F.3d at 320, 323.

Finally, in joining this consensus, we note that the ordinary arguments against equitable tolling do not apply. For example, there is no "potential for . . . endless tolling" of a prisoner's § 1983 claim, because the clock would only stop for the length of the state's exhaustion period. *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221,

20

227–28 (2012). If defendants are correct that Virginia's administrative grievance process will never exceed 180 days from the time a grievance is filed, then Virginia's officials will never be subject to a tolling period exceeding seven months. A maximum extension of seven months will not prejudice these officials, given that the grievance process will put them on notice of a potential civil rights claim and allow the parties to develop a contemporaneous "administrative record that clarifies the contours of the controversy." *Porter*, 534 U.S. at 525.

A clear rule that tolls limitations during the grievance process also avoids any risk of "loose[ning] the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation." *Harris*, 209 F.3d at 330. The inquiry here is objective. All a court must do is determine the point of exhaustion and run the limitations period from that date.

We therefore reject the officers' invitation to deviate from the path followed by seven other circuits. Battle's limitations period must be tolled for the 83 days in which he exhausted his administrative remedies, as he was required to do before bringing suit. This satisfies the goals of § 1983 and the PLRA while also comporting with principles of equity: it gives Battle the benefit of the full limitations period applicable to other litigants, no more and no less. In sum, Battle's § 1983 complaint is timely; it was filed within two years of the date he exhausted administrative remedies required by the PLRA.

21

## V.

For the foregoing reasons, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*