**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 23-1127**

───────────

ASHLEY BUSH,

          Plaintiff – Appellant,

v.

FREDERICK COUNTY PUBLIC SCHOOLS,

          Defendant – Appellee.

───────────

Appeal from the United States District Court for the District of Maryland, at Baltimore. Julie R. Rubin, District Judge.  (1:21−cv−01190−JRR)

───────────

Submitted:  January 3, 2024                    Decided:  February 15, 2024

───────────

Before WYNN, HARRIS, and QUATTLEBAUM, Circuit Judges.

───────────

Affirmed by unpublished per curiam opinion.

───────────

**ON BRIEF:**  Dionna M. Lewis, Jessica M. Ochoa, DISTRICT LEGAL GROUP, PLLC, Washington, D.C., for Appellant.  Donald E. English, Jr., Tonecia R. Brothers-Sutton, JACKSON LEWIS P.C., Baltimore, Maryland, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ashley Bush was fired from her position as the head girls' basketball coach at Frederick High School after a recording circulated online that purported to capture her saying "f*** white people" to her players. She sued her former employer, Defendant Frederick County Public Schools, alleging that the actual reason for her termination was race and sex discrimination and retaliation. The district court granted summary judgment to Defendant. We affirm.

I.

We omit most of the background facts leading up to this action because we are faced on appeal with only a narrow set of questions. The following facts that we do provide are related in the light most favorable to Bush, the nonmovant.

Beginning in 2015 and for several school years thereafter, Defendant employed Bush on an at-will basis as the head girls' basketball coach at Frederick High School ("Frederick"). On February 5, 2020, several of Bush's varsity players quit the team, alleging abusive behavior by Bush (which Defendant investigated and could not substantiate). That same day, Bush held a meeting with her team to address the issue.

In mid-February, someone posted an audio recording on Facebook that purported to be of Bush speaking to her players during the February 5 meeting. In that recording—which "appeared to be a clip of a larger conversation"—an adult woman is heard saying, ". . . [a]nd I use sports to make you guys so damn strong that we can get to the point of, and I apologize for saying it, but f*** white people. That's right. That's where I'm at, um,

2

especially with how society is and so I think sometimes I go overboard." J.A. 367 (asterisks supplied).

Bush admits that the voice on the recording sounds like her, but says she does not recall making that statement. Frederick's assistant principal spoke to the players present for the meeting, all of whom "responded that they did not recall Bush saying those statements, but no one outright denied that she said them." J.A. 434. During their depositions in this litigation, two students present at the meeting agreed that the recording sounded like Bush, while maintaining that they did not remember her making the statement. Defendant's expert witness stated that while the recording "did not meet the criteria or standard for a full voice identification," the voice was "substantially similar" to a known recording of Bush. J.A. 445.

Frederick Principal David Franceschina and other of Defendant's employees believed the voice to be Bush's. So, on February 18, 2020, Defendant terminated Bush for saying "f*** white people" to students, which it concluded was a violation of its antidiscrimination policy.

On December 14, 2020, Bush filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race and sex discrimination and retaliation lasting from January 19, 2018, to February 18, 2020. The EEOC issued a right-to-sue letter on February 24, 2021, and Bush filed suit on May 14, 2021, bringing nine claims under federal and state law. Relevant here, her complaint alleged race and sex discrimination in violation of Title VII (Counts I and II); hostile work environment as a result of race and sex discrimination (Count VII); violations of the Maryland Fair

3

Employment Practices Act (Count VIII); and retaliation in violation of Title VII (Count IX).

Defendant successfully moved for summary judgment, *Bush v. Frederick Cnty. Pub. Schs.*, No. 1:21-CV-01190-JRR, 2023 WL 170410, at \*1 (D. Md. Jan. 12, 2023), and Bush appealed.[1]

## II.

This Court reviews a summary-judgment order de novo. *Battle v. Ledford*, 912 F.3d 708, 712 (4th Cir. 2019). "Summary judgment is appropriate only when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

Bush appeals only the grant of summary judgment on her discrimination and retaliation claims brought under Title VII and the Maryland Fair Employment Practices Act. She makes no argument on appeal that the district court erred in granting summary judgment on her other claims. We conclude that her discrimination and retaliation claims are largely time-barred and that the claim that is not time-barred cannot survive summary judgment. Accordingly, we affirm.

---

[1] The district court struck Bush's response to Defendant's summary judgment motion as untimely, and then denied her motion for reconsideration of that matter. Bush appeals those orders, as well as the order granting summary judgment to Defendants. Because we conclude that summary judgment was proper even if we consider Bush's response, we do not reach the question of whether the court properly struck the response.

4

A.

As a preliminary matter, Bush contends that Defendant waived the issue of timeliness and exhaustion of remedies by not raising it in its pre-answer partial motion to dismiss and failing to raise it at all until its motion for summary judgment. We disagree.

"As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the" EEOC. *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019). However, "[p]rerequisites to suit like Title VII's charge-filing instruction are not" jurisdictional; rather, "they are properly ranked among the array of claim-processing rules that must be timely raised to come into play." *Id.* That is, a defendant must raise this issue as an affirmative defense.

But Defendant was not required to raise the defense *in its pre-answer motion to dismiss*. Bush did not include details of when she filed her EEOC charge in her complaint, nor did she attach the charge to the complaint, so Defendant's attempt to raise it in a Rule 12(b)(6) motion would have been premature. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) ("[A Rule 12(b)(6) motion] generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred. But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense clearly appear *on the face of the complaint*." (cleaned up)); *L.N.P. v. Kijakazi*, 64 F.4th 577, 585–86 (4th Cir. 2023) ("[A] Rule 12(b)(6) motion to dismiss . . . generally does

5

not enable the court to determine whether the exhaustion requirement has been satisfied . . . because exhaustion is treated as an affirmative defense.").

Instead, the first opportunity for Defendant to raise this defense was in its answer. *See* Fed. R. Civ. P. 7(a)(2), 12(h)(2)(A). And, contrary to Bush's assertion, that is precisely what Defendant did. *See* J.A. 79 (Defendant's Answer, stating under "Defenses" that "[t]o the extent Plaintiff claims discrimination or discrete adverse actions that occurred more than 300 days before Plaintiff filed her charge of discrimination with the EEOC, such claims are time-barred"). So, we turn to the matter of timeliness.

## B.

Both Title VII and the Maryland Fair Employment Practices Act require a plaintiff alleging employment discrimination to exhaust administrative remedies before filing their lawsuit, or else the claim is time barred. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (discussing 42 U.S.C. § 2000e-5(e)(1)), *superseded in part on other grounds by* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5; *Watson v. Bd. of Educ. for Prince George's Cnty.*, No. 2006, Sept. Term, 2019, 2021 WL 4893594, at *16 (Md. Ct. Spec. App. Oct. 20, 2021) (explaining that, under Md. Code, State Gov't § 20-1013(a)(1)(i), the complainant must have "initially filed a *timely* administrative charge or [a] complaint under federal, State, or local law"—that is, a charge filed with the federal EEOC or a complaint filed with the Maryland Commission on Civil Rights or the county Human Relations Commission—"alleging an unlawful employment practice by the respondent" (emphasis added)).

6

For an EEOC charge to be timely, it must be filed within either 180 days or 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). The 300-day deadline applies where a complainant first files her charge with a state or local agency, as is required where a state has such a procedure. *Id.* § 2000e-5(c), (e)(1). But "[i]f the state or local agency has a 'worksharing' agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies. She may file her charge with one agency, and that agency will then relay the charge to the other." *Fort Bend Cnty.*, 139 S. Ct. at 1846. Maryland has such an agreement, so Bush had 300 days after the alleged unlawful employment practice occurred to file her charge with the EEOC. *See E.E.O.C. v. R&R Ventures*, 244 F.3d 334, 338 n* (4th Cir. 2001); *E.E.O.C. v. Techalloy Md., Inc.*, 894 F.2d 676, 678 (4th Cir. 1990).

Bush filed her EEOC charge on December 14, 2020, exactly 300 days after her termination on February 18, 2020. So, only her allegations related to her termination are timely. *See Morgan*, 536 U.S. at 113 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act."). Bush states that her other claims are timely because they relate to an ongoing hostile work environment, but she provides no argument for why that is so, given that she has alleged only a series of discrete acts. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." (cleaned up)). We therefore address only her termination.

7

C.

In considering whether Bush's termination constitutes discrimination or retaliation under Title VII or the Maryland Fair Employment Practices Act, we apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *E.g.*, *Terefe v. Stanley Black & Decker, Inc.*, 804 F. App'x 207, 208 (4th Cir. 2020) (per curiam). Under that framework, the plaintiff "must make a prima facie showing" of discrimination. *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019). "If an employee meets [her] burden to establish a prima facie case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action. If the employer meets this burden of production, the employee must then demonstrate that the defendant's proffered reason is pretextual." *Id.* (citation omitted).

Assuming Bush "established a *prima facie* case for discrimination, retaliation, or both," Bush does not contest that Defendant put forward a legitimate non-discriminatory and non-retaliatory reason for her termination (the "f*** white people" statement). *Bush*, 2023 WL 170410, at *9. So, her claim can survive summary judgment only if she can point to evidence that Defendant's stated rationale was pretext for discrimination or retaliation. *See Adkins v. CSX Transp., Inc.*, 70 F.4th 785, 793 (4th Cir. 2023) ("[T]o survive summary judgment on pretext, the plaintiffs 'must produce sufficient evidence to create a genuine dispute of material fact such that a reasonable factfinder could conclude the adverse employment action was taken for an impermissible reason,' *i.e.*, discrimination or retaliation." (quoting *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016))),

*cert. petition docketed sub nom. Baker v. CSX Transp., Inc.*, No. 23-760 (U.S. Jan. 16, 2024).

Bush has not met that burden here. Instead, she raises arguments only as to whether it is in fact her voice on the recording. But even assuming there is a genuine dispute as to whether Bush is the person whose voice is captured on the recording, that is immaterial. "[W]hen an employer gives a legitimate, nondiscriminatory reason for terminating an employee, 'it is not our province to decide whether the reason was wise, fair, *or even correct*,' so long as it was *the genuine reason* for the employment decision." *Id.* at 794 (quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000)). Bush has not pointed to any evidence from which a jury could conclude that the decisionmaker, Principal Franceschina, did not genuinely believe that it was her voice on the recording when he decided to terminate her.[2] To the contrary, Bush concedes that the voice on the recording sounds like hers.

## III.

For the reasons stated, we affirm the district court's decision granting summary judgment to Defendant. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this Court and argument would not aid the decisional process.

*AFFIRMED*

---

[2] Bush provided letters of support from some of her former players and their parents alleging that she was targeted by Defendant for being outspoken on racial-justice issues. But these letters only demonstrate some community members' perceptions; they do not provide any admissible evidence supporting pretext.