**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 21-2051

_____

JUSTIN ADKINS; JUSTIN BLAKE; EDWIN GLOWACKI; ERIC JORDAN; KEVIN PALMER; DENNIS SARGENT; TRAVIS THORNSBERRY; MICHAEL WILLIAMS; JOHN BAKER; JAMES BLAIN; DEVERY BROWN; JAMES DEAL; JONATHAN JEFFERS; ROBERT MOSTELLER; MICHAEL L. POTTER; MICHAEL D. POTTER; JESSEE WALLACE; TIMOTHY WITT; JOHN BILLS; MICHAEL CLARK; RANDALL CRAYCRAFT; JOHN FRASURE; SAMMY MADDIX; JAMES STINNETT; TODD THAYER; MICHAEL CAMPBELL; TONY ABDON; THE ESTATE OF CHAD LITTLE; BRANDON ADKINS; JACQUELINE MARSHALL; HOMER MAYNARD; SCOTT MORRISON; JEREMY NAPIER; SHAWN PATTERSON; MATTHEW WOODS; JOHN CARPENTER; QUINCY CHRISTIAN; GREGORY HAMM; ETHAN MULLINS; MICHAEL OWENS; JONATHAN ROWE; DANNY STEWART; LLOYD WILLIAMS; DAVID MANIS; JOSHUA FERGUSON; ERIC SPEAKS; DONALD STEPHENS; JASON BARKER; CHAD DOWDY; JERRY FLOCKER; GROVER KELLEY; CHRISTOPHER CLAY STILTNER; DENNIS HUTCHINSON; JOSHUA HALL; ZACH POTTER; DEANNA LANHAM; SAMUEL PRESTON; BOBBY AKERS; GERALD BARBER,

Plaintiffs - Appellants,

v.

CSX TRANSPORTATION, INCORPORATED; CRAIG S. HELIGMAN, M.D.; GUS THOELE; CURT SHOGREN; MILTON STORM; DELANDO JONES; TOM DEANGELO; SHAWN LUSK; ELIZABETH CREEDON; KENNETH RAY EMERSON,

Defendants - Appellees,

and

CSX CORPORATION; DILLON DOUG JONES,

Defendants.

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington.  Robert C. Chambers, District Judge.  (3:18-cv-00321)

Argued:  May 4, 2023                                    Decided:  June 16, 2023

Before NIEMEYER, AGEE, and RUSHING, Circuit Judges.

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Agee and Judge Rushing joined.

**ARGUED:**  Jeff R. Dingwall, EIGHT & SAND, San Diego, California; Gregory G. Paul, MORGAN & PAUL, PLLC, Pittsburgh, Pennsylvania, for Appellants.  Brian David Schmalzbach, MCGUIREWOODS LLP, Richmond, Virginia, for Appellees. **ON BRIEF:** Melissa Foster Bird, NELSON MULLINS RILEY & SCARBOROUGH LLP, Huntington, West Virginia; Samuel L. Tarry, Jr., Tysons, Virginia, Davis M. Walsh, Kathryn M. Barber, MCGUIREWOODS LLP, Richmond, Virginia, for Appellees.

2

NIEMEYER, Circuit Judge:

On June 16, 2017, CSX Transportation, Inc. ("CSXT") issued furlough notices to employees at its facility in Huntington, West Virginia. Over the course of the weeks following the issuance of those notices, over 65 employees submitted forms requesting to take medical leave based on claimed minor soft-tissue injuries sustained while off duty. The forms were similar in content; all were signed by one of two chiropractors; and all called for medical leave of eight weeks or more. Under CSXT's benefit plans, if an employee were furloughed while on medical leave, the employee would receive health and welfare benefits for up to two years. Otherwise, a furloughed employee would receive such benefits for only four months.

Suspecting benefits fraud, CSXT charged the employees with violating its workplace rule against dishonesty and, following hearings, terminated their employment.

In response to their termination, 58 employees commenced this action against CSXT[*] and its involved employees (collectively hereafter, "CSXT"), alleging, in ten counts, violations of their rights under federal and state law, including, as relevant here, violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), the Rehabilitation Act of 1973, the West Virginia Human Rights Act, and the Family and Medical Leave Act of 1993 ("FMLA"). The plaintiffs alleged that CSXT discriminated and retaliated against them for seeking medical leave and also interfered with their rights

---

[*] The plaintiffs also named CSXT's parent corporation, CSX Corporation, as a defendant, but the district court dismissed CSX Corporation for lack of personal jurisdiction, a ruling that the plaintiffs are not challenging on appeal.

3

under the FMLA.   Following discovery, the district court granted CSXT summary judgment on all claims.

With respect to the plaintiffs' discrimination and retaliation claims, we conclude that CSXT provided a legitimate, nondiscriminatory reason for terminating the plaintiffs and that the plaintiffs failed to present evidence to create a genuine issue of material fact as to whether the reason was pretextual.   And with respect to the plaintiffs' FMLA interference claim, we find that the plaintiffs failed to present any evidence of prejudice. Accordingly, we affirm.

I

During the period of June and July 2017, following CSXT's June issuance of furlough notices to a number of employees, CSXT received 67 forms by which employees at CSXT's Huntington facility took medical leave.   Pursuant to the collective bargaining agreement, the tool for taking such leave was a "Certificate of Ongoing Illness or Injury" form ("COII form"), which was typically prepared and signed by a medical provider.   All 67 of the COII forms received were signed and submitted by one of two chiropractors, Dr. Shannon Johnson and Dr. Daniel Carey.   The forms submitted were similar or identical in content, and Dr. Johnson submitted 14 such forms on a single day.   All forms claimed that the employee suffered from minor musculoskeletal conditions such as sprains or muscle spasms; all but one stated that the injuries were sustained while the employee was off duty; all forms described generalized medical conditions and included no individualized assessment; and all forms required that the employee remain off work for at least eight

4

weeks. CSXT found the eight-week leave especially extraordinary in light of its chief medical officer's opinion that only "a few days to a week or so" should have been necessary for the claimed injuries to heal.

After CSXT had received over 50 of these COII forms, its Chief Medical Officer, Dr. Craig Heligman, became suspicious that the forms were being fraudulently submitted in an effort to extend the employees' health and welfare benefits. He indicated that in his lengthy career, including approximately five years at CSXT, he had never seen anything like what was occurring — two practitioners' submission of "so many" markedly similar COII forms "in that very short period of time" had "just never happened."

Dr. Heligman provided the information supporting his suspicion to CSXT's Labor Relations team, which reviewed the information and then decided to pursue charges of dishonesty and fraud against the employees involved. Accordingly, as required by the collective bargaining agreement, CSXT issued charge letters to each employee to "[a]rrange to attend a formal investigation" that was intended

> to develop the facts and place your responsibility, if any, in connection with information received on July 14, 2017, from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

The investigation as to each employee involved a hearing at which the employee, at his election, appeared; was represented by a union representative; presented evidence; and cross-examined company witnesses. A transcript of each hearing was made. Following the hearings, the full record was examined by the Labor Relations team, and that team then

5

made its recommendations to CSXT Vice President Brian Barr. Following his collaboration with the team, Barr made the decision to terminate the plaintiffs' employment for violating the CSXT Code of Ethics and the dishonesty prohibition in CSXT's Operating Rule 104.2, which provided, "Employee behavior must be respectful and courteous. Employees must not be any of the following: (a) *dishonest*, (b) insubordinate, (c) disloyal, or (d) quarrelsome." (Emphasis added). CSXT also sent letters to Dr. Johnson and Dr. Carey advising them that CSXT would no longer accept medical documentation from their offices on behalf of any CSXT employee. Finally, CSXT notified its benefits providers.

Many of the employees appealed to the Public Law Board — an arbitral tribunal composed of one union representative, one CSXT representative, and one neutral member — and the Public Law Board largely upheld the termination decisions, although it reinstated a few employees.

In February 2018, 58 former CSXT employees commenced this action against CSXT, alleging ten distinct claims arising under federal and state law in connection with the investigation and the subsequent terminations of their employment. On CSXT's motion, the court dismissed six of the claims in various orders that have not been appealed. With respect to the four remaining claims — claims under ERISA, the Rehabilitation Act, the West Virginia Human Rights Act, and the FMLA — the court granted CSXT summary judgment by order dated August 23, 2021. With respect to the plaintiffs' claims of discrimination and retaliation under those statutes, the court found that CSXT had provided a consistent and legitimate, nondiscriminatory reason for terminating the plaintiffs based on CSXT's belief that the plaintiffs were seeking time off work on an illegitimate basis and

6

that the plaintiffs had failed to create a genuine issue of material fact as to whether the reason CSXT gave was pretextual. And with respect to the plaintiffs' FMLA interference claim, the court found that CSXT did not interfere with the plaintiffs' rights because it honestly believed that the plaintiffs were seeking leave for an improper purpose.

From the district court's judgment, the plaintiffs filed this appeal.

After this appeal was filed, all but six of the plaintiffs resolved their claims and are no longer parties to this action. The six remaining plaintiffs are John Baker, Randall Craycraft, Chad Dowdy, Sammy Maddix, Danny Stewart, and James Stinnett, and the facts relating to them are consistent with those described generally above for the 58 plaintiffs. They visited Dr. Carey or Dr. Johnson for soft-tissue injuries, such as back pain or muscle spasms; the chiropractors submitted COII forms indicating that each employee would need to be off work for at least eight weeks; and the employment of each employee was terminated for violating the CSXT Code of Ethics and Operating Rule 104.2(a) after completion of the investigators' hearings. Also, these remaining plaintiffs are appealing only the district court's summary judgment order of August 23, 2021, which granted CSXT summary judgment on their claims for discrimination and retaliation under ERISA, the Rehabilitation Act, the West Virginia Human Rights Act, and the FMLA, as well as their claim of FMLA interference.

II

As to the plaintiffs' claims that CSXT discriminated and retaliated against them, in violation of their rights under ERISA, the Rehabilitation Act, the West Virginia Human

7

Rights Act, and the FMLA, the district court credited, for purposes of argument, that the plaintiffs had established a prima facie case. The court held, however, that CSXT had given a legitimate, nondiscriminatory reason for terminating the plaintiffs' employment and that the plaintiffs had failed to present evidence sufficient to create a factual dispute as to whether the reason given was pretextual. The plaintiffs contend that they did indeed create a question of material fact as to pretext that should have precluded the entry of summary judgment.

Both parties agree to the legal framework for the plaintiffs' discrimination and retaliation claims under the four statutes. ERISA makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. The Rehabilitation Act prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The West Virginia Human Rights Act makes it "an unlawful discriminatory practice . . . [f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is blind or disabled." W. Va. Code § 5-11-9(1). And the FMLA prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any individual for" exercising their FMLA rights. 29 U.S.C. § 2615(a)(2). The

8

plaintiffs' claims are thus based on the prohibition in each of these four statutes against discrimination or retaliation in response to requests to take medical leave.

While the antidiscrimination and antiretaliation provisions of ERISA, the Rehabilitation Act, the West Virginia Human Rights Act, and the FMLA provide varying protections to employees, claims under these statutory provisions are nonetheless analyzed under the same burden-shifting framework, as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 239 (4th Cir. 1991) (applying *McDonnell Douglas* to ERISA discrimination claim); *Hannah P. v. Coats*, 916 F.3d 327, 342 (4th Cir. 2019) (applying *McDonnell Douglas* to Rehabilitation Act discrimination claim); *Mayflower Vehicle Sys., Inc. v. Cheeks*, 629 S.E.2d 762, 772 (W. Va. 2006) (applying *McDonnell Douglas* to West Virginia Human Rights Act discrimination claim); *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016) (applying *McDonnell Douglas* to FMLA retaliation claim). Under the *McDonnell Douglas* burden-shifting framework, a plaintiff claiming disability discrimination or retaliation "must first make a prima facie showing that he [was disabled or] engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's [disability or] protected activity." *Vannoy*, 827 F.3d at 304 (quoting *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006)). Once the plaintiff proffers evidence establishing his prima facie case and the employer offers a legitimate, nonretaliatory or nondiscriminatory reason for the adverse action, the plaintiff "bears the burden of establishing that the employer's proffered explanation is pretext for . . . retaliation" or discrimination. *Id.* (quoting

9

*Yashenko*, 446 F.3d at 551). "A plaintiff may satisfy this burden by showing either that the employer's explanation is not credible, or that the employer's decision was more likely the result of retaliation" or discrimination. *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016).

For our analysis, we too assume without deciding, as the district court did, that the plaintiffs carried their initial burden of establishing a prima facie case under the pertinent statutes. We also conclude that CSXT provided a "legitimate, nondiscriminatory reason" for terminating each of the plaintiffs based on its finding that they had violated the workplace rule prohibiting dishonesty. *McDonnell Douglas*, 411 U.S. at 802. The plaintiffs therefore have the burden of demonstrating that the employer's proffered explanation was merely a pretext for discrimination or retaliation. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993). And to survive summary judgment on pretext, the plaintiffs "must produce sufficient evidence to create a genuine dispute of material fact such that a reasonable factfinder could conclude the adverse employment action was taken for an impermissible reason," *i.e.,* discrimination or retaliation. *Sharif*, 841 F.3d at 203.

The plaintiffs argue that they established a factual dispute over pretext by showing that the result of CSXT's disciplinary investigations was "predetermined" because Dr. Heligman was the only witness who testified on behalf of the company and by the time he testified at the disciplinary hearings, "he had already concluded that the Plaintiffs engaged in fraud and were guilty." The plaintiffs also emphasize that CSXT did not identify any conclusive evidence of fraud, as Dr. Heligman acknowledged that his suspicions were based on "pure speculation." Thus, by challenging Dr. Heligman's conclusions, which

10

were the basis for CSXT's decision to terminate their employment, the plaintiffs contend they created questions of fact regarding whether CSXT had a legitimate basis to reach the conclusions it did.

The difficulty with this argument is that while Dr. Heligman's conclusions may have been "predetermined" as of the time of the hearings, that fact does not make the conclusions pretextual. Pretext calls for an inquiry into whether the suspected dishonesty and fraud were the *real reasons* for CSXT's decision. And nothing that the plaintiffs have pointed to calls into question whether suspected dishonesty and fraud were Dr. Heligman's real reasons for pursuing the investigation and employee discipline. Dr. Heligman pursued the investigation of the plaintiffs because of the clear pattern he discerned with the deluge of COII forms in the context of the furlough notices, and surely such evidence well supported his suspicion; indeed, there is no evidence that anything else contributed to his decision. And the fact that Dr. Heligman expressed his concerns consistently throughout the investigation, beginning in the middle of July 2017 and continuing through the August 2017 disciplinary hearings, suggests that a genuine concern regarding potential fraud "truly was the reason for the plaintiff[s'] termination." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). Moreover, when an employer gives a legitimate, nondiscriminatory reason for terminating an employee, "it is not our province to decide whether the reason was wise, fair, *or even correct*," so long as it was *the genuine reason* for the employment decision. *Id*. (emphasis added) (quoting *DeJarnette*, 133 F.3d at 299).

11

Even more importantly, it was not Dr. Heligman who made the decision to terminate the plaintiffs' employment. "In assessing pretext, a court's focus must be on the perception *of the decisionmaker . . . ." Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 217 (4th Cir. 2007) (emphasis added) (quoting *Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228, 246 (1st Cir. 2006)).   Dr. Heligman formed his suspicion and accordingly initiated the disciplinary process provided by the collective bargaining agreement, which involved hearings and appeals.  It was only at the conclusion of the hearings that Vice President Barr, *based on the record of those proceedings*, made the decision to terminate the plaintiffs' employment, including each of the six remaining plaintiffs here.  He explained that he made the decision based on suspected fraud as evidenced by the pattern of similar leave requests in the context of the furlough notices and the employees' failure to submit additional documentation from other medical providers to substantiate their medical claims in response to the disciplinary investigations.  And the plaintiffs have failed to put forward *any evidence* to suggest that this was not the actual reason for Barr's decision.  Indeed, the plaintiffs elected to present *no* evidence at the hearings aside from the documentation generated by Dr. Johnson and Dr. Carey.

While we make no determination as to whether the six plaintiffs here *actually engaged* in dishonesty or fraud, the pattern of similar leave requests in the context of the furlough notices was certainly ample evidence to raise legitimate suspicions of benefits abuse, and therefore we do conclude that the plaintiffs have failed adequately to challenge that suspected dishonesty was CSXT's actual reason for terminating the plaintiffs'

12

employment.  Accordingly, we affirm the district court's grant of summary judgment to CSXT on the plaintiffs' discrimination and retaliation claims under the four statutes.

## III

The plaintiffs also contend that the district court erred in granting summary judgment on their FMLA interference claim.  They argue that when CSXT received the COII forms, the FMLA required the company to treat their requests as FMLA leave requests and to provide them with notice of their FMLA rights, which CSXT did not do.  The district court nonetheless granted CSXT's motion for summary judgment, concluding that CSXT did not interfere with the plaintiffs' FMLA rights because it *honestly believed* that the plaintiffs were seeking leave for an improper purpose.  The plaintiffs contend, however, that an honest belief is no defense to an FMLA interference claim and that they otherwise advanced a legitimate FMLA interference claim.

As a threshold matter, plaintiffs argue that CSXT did not file a motion for summary judgment as to their FMLA interference claim and that therefore it was improper for the district court to consider summary judgment *sua sponte* without first providing "notice and a reasonable time to respond."  Fed. R. Civ. P. 56(f).  The record, however, belies their argument.  CSXT stated in its motion for summary judgment that it was moving "for summary judgment as to *each* of the ten (10) causes of action" in the operative complaint, including the count for "denial of benefits *and interference*" under the FMLA.  (Emphasis added).  It also expressly, albeit briefly, discussed FMLA interference in its supporting memorandum.  Finally, the parties discussed the FMLA interference claim at length during

13

the hearing on the summary judgment motion, and the plaintiffs made no objection claiming that the issue was not before the court.  The FMLA interference claim was clearly presented to the district court for summary judgment and properly addressed by the court.

On the merits, the plaintiffs contend that CSXT had a duty under the FMLA to treat their COII forms as requests for FMLA leave and to notify them of their rights in that regard.  The record shows that CSXT did neither, giving the plaintiffs a plausible claim for relief.  In rejecting this claim, the district court applied an "honest belief" doctrine, as applied by the Seventh Circuit in *Kariotis v. Navistar International Transportation Corp.*, 131 F.3d 672 (7th Cir. 1997).  In *Kariotis*, the court held that an employer does not interfere with an employee's exercise of FMLA rights when it terminates an employee based on the honest belief that the employee is not taking FMLA leave for an approved purpose, regardless of whether such belief is correct.  *Id*. at 681.

The law is unsettled on application of the honest belief doctrine as a defense to an FMLA interference claim.  *See Crouch v. Whirlpool Corp.*, 447 F.3d 984, 986 (7th Cir. 2006) (reiterating that "an employer's honest suspicion that the employee was not using his medical leave for its intended purpose is enough to defeat the employee's . . . FMLA claim"); *Medley v. Polk Co.*, 260 F.3d 1202, 1207–08 (10th Cir. 2001) (recognizing the existence of an "honest belief" defense to an FMLA retaliation claim and approving jury instruction on the same); *Parker v. Verizon Pa., Inc.*, 309 F. App'x 551, 563 (3d Cir. 2009) (recognizing that honest belief doctrine applies in an FMLA interference claim).  And we have not yet addressed the issue.  We need not, however, do so here because the plaintiffs' claim otherwise fails.  Nonetheless, CSXT argues that even if it failed to treat the COII

14

forms as FMLA requests and to provide notices of FMLA rights, the plaintiffs were not prejudiced by those failures. To address this argument, we first turn to the statutory provisions involved.

The FMLA entitles eligible employees to take "12 workweeks of leave" during a 12-month period for a qualifying "serious health condition that makes the employee unable to perform the functions of" his job. 29 U.S.C. § 2612(a)(1)(D). "When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1). If the employer determines that the requested leave will not be designated as FMLA-qualifying, "the employer must notify the employee of that determination." *Id*. § 825.300(d)(1). Employers are also required to furnish a "rights and responsibilities" notice to the employee "detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations" with respect to their FMLA leave. *Id*. § 825.300(c)(1).

These rights are "prescriptive," and claims for violations of them are known as "interference" or "entitlement" claims, arising under 29 U.S.C. § 2615(a)(1). *Yashenko*, 446 F.3d at 546; *see also* 29 U.S.C. § 2615(a)(1) (stating that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA). And an employee has a cause of action against his employer under 29 U.S.C. § 2617 when he can prove that (1) the employer interfered with his exercise of FMLA rights and (2) the interference caused the employee prejudice. *See*

15

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).  Thus, to make out an FMLA interference claim, an employee must demonstrate (1) that he is entitled to an FMLA benefit; (2) that his employer interfered with the provision of that benefit; and (3) that the interference caused him harm.  *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 427 (4th Cir. 2015).  The FMLA "provides no relief *unless the employee has been prejudiced* by the violation."  *Ragsdale*, 535 U.S. at 89 (emphasis added).

In contending that they met the prejudice requirement, the plaintiffs argue that if they had received the required notice of FMLA rights, they could have (1) structured their leave differently and (2) "completed the medical certification form and establish[ed] a dialogue with the CSX medical department who in turn could [have] establish[ed] the authenticity of the leave, request[ed] clarification or require[d] a second opinion," as contemplated by 29 U.S.C. § 2613.

While those might theoretically be possible, there is no evidence in the record before us regarding *how* the plaintiffs would have structured their leave differently if CSXT had provided them with notice of their FMLA rights.  The record shows that the plaintiffs requested two months of medical leave and were indeed able to take that leave — during which their benefits continued and their jobs were protected — while the disciplinary process played out.

Further, while § 2613 and its corresponding regulation, 29 C.F.R. § 825.307, set forth a procedure for what employers "may" and "may not" do if questions arise regarding the validity of an employee's claimed medical condition, neither mandates that employers *must* request a certification, clarification, or second opinion.  *See* 29 U.S.C. § 2613(a) ("An

16

employer *may* require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee" (emphasis added)); *see also* 29 C.F.R. § 825.307(a) ("[T]he employer *may* contact the health care provider for purposes of clarification and authentication of the medical certification . . . after the employer has given the employee an opportunity to cure any deficiencies" (emphasis added)); *id.* § 825.307(b)(1) ("An employer who has reason to doubt the validity of a medical certification *may* require the employee to obtain a second opinion at the employer's expense" (emphasis added)); *Rhoads v. FDIC*, 257 F.3d 373, 386 (4th Cir. 2001) ("Because the term 'may' is permissive, the plain language of the statute indicates that an employer who questions the validity of a certification has the option of seeking a second and third opinion, without being required to do so").  The fact that CSXT did not request a certification from the plaintiffs' healthcare providers or a second opinion from a different provider therefore does not, without more, establish that plaintiffs were prejudiced by CSXT's failure to treat their leave requests as potentially FMLA-qualifying.  And while there may still be "potential pitfalls for an employer who chooses not to pursue a second opinion," *Rhoads*, 257 F.3d at 386, the plaintiffs here had ample opportunity to provide CSXT with additional evidence of their alleged injuries as part of the disciplinary investigation, but none of the plaintiffs submitted information from another health care provider.  It is the burden of an employee bringing an FMLA interference claim to establish prejudice, *see Ragsdale*, 535 U.S. at 90, and the plaintiffs here have failed to identify any additional information that they could have provided to authenticate their claimed injuries

17

if they had been invited to do so through the mechanism of a formal FMLA certification rather than the disciplinary process.

In the circumstance of this case, where the plaintiffs sought and were granted two months of medical leave, during which they were fired for misconduct, we conclude that the plaintiffs have failed to establish the prejudice element of their FMLA interference claim. The benefit of the FMLA and notice of FMLA rights could not have precluded the plaintiffs' loss of employment for dishonesty. *See Vannoy*, 827 F.3d at 304–05 ("The FMLA does not prevent an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior").

The FMLA serves the important purpose of allowing employees to take leave for legitimate family needs and medical reasons, but it is not a right that can be fraudulently invoked with impunity. In order to maintain the integrity of the FMLA, employers must be able to investigate and address plausible allegations that employees have been dishonest in their medical leave claims. In this case, CSXT did just that, and the plaintiffs have failed to meet their burden of showing that CSXT's explanation for their termination — that is, that the company determined that the employees had violated workplace rules regarding dishonesty — was pretextual. And the plaintiffs have also failed to demonstrate that if they had been provided notice of their rights under the FMLA, they would have obtained a different outcome, either with respect to how their leave was structured or CSXT's ultimate determination regarding whether their leave request was evidence of dishonesty.

The judgment of the district court is therefore

18

*AFFIRMED.*